766 So.2d 501 (2000)
STATE of Louisiana
v.
Mitchell SMITH.
State of Louisiana
v.
Lisa M. Garrett.
State of Louisiana
v.
Melanie Varnado.
State of Louisiana
v.
Kelly A. Baron.
Nos. 99-KA-0606, 99-KA-2094, 99-KA-2015 and 99-KA-2019.
Supreme Court of Louisiana.
July 6, 2000.
Rehearing Denied August 31, 2000.
Dissenting Opinion Denial of Rehearing July 6, 2000.
*503 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Balentin M. Solino, Counsel for Applicant in No. 99-KA-2094.
Elizabeth W. Cole, Hans P. Sinha, Counsel for Respondent in No. 99-KA-2094.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Valentin M. Colino, Keva M. Landrum, Counsel for Applicant in No. 99-KA-2019.
William R. Campbell, Jr., Robert C. Jenkins, Jr., Sharon Setzer, Counsel for Respondent in No. 99-KA-2019.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Serena Conosciani, Jonathan P. Friedman, Valentin M. Colino, Counsel for Applicant in No. 99-KA-2015.
William R. Campbell, Jr., Christine T. Changho, Sharon Setzer, Counsel for Respondent in No. 99-KA-2015.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Charles H. Braud, Jr., Thomas S. Halligan, Valentin M. Colino, Holli Ann Herrle-Castillo, Counsel for Applicant in No. 99-KA-0606.
Bryne W. Dyer, III, Counsel for Respondent in No. 99-KA-0606.
Jeffrey Thomas Reeder, Stephen R. Scarborough, Counsel for amici curiae in No. 99-KA-0606, William P. Richardson, Bart Gould, Denne B. Aime, Stephen J. Crump, First Unitarian University Church, Eugene G. Lamothe.
Martha Jean Kegal, Michael Adams, Counsel for amicus curiae in No. 99-KA-0606, American Civil Liberties Union.
Dissenting Opinion by Judge Lemmon on Denial of Rehearing July 6, 2000.
TRAYLOR, Justice.[*]

FACTS/PROCEDURAL HISTORY
On September 24, 1995, the alleged victim and Mitchell Smith began talking while consuming alcohol at Brewski's Lounge in Chalmette. After at least one cocktail together, Mr. Smith asked her to accompany him to another bar, and the two left and went to Gabby's, a bar in New Orleans East. While at Gabby's, the alleged victim felt sick, apparently from consuming alcohol while taking epilepsy medicine. Although she testified that she told Mr. Smith she wanted to go home, Mr. Smith convinced her to go to a motel with him to "rest." She claimed she hesitantly agreed after insisting that nothing was going to happen between them. Mr. Smith testified that he asked her to "fool around" and she agreed. He also testified that they kissed in his car.
*504 The accuser testified that, after arriving at Jack's Motel on Chef Menteur Highway, she passed out on the bed, but awoke to find Mr. Smith undressing her. There was conflicting testimony as to exactly what occurred at the motel. Mr. Smith testified that oral sex occurred, but that consensual oral sex was the extent of the sexual activity. His accuser claimed that she cried rape, but was unable to move, and was forced to have vaginal and anal intercourse. After, she became ill, Mr. Smith helped her to his car and drove her home.
On September 25, 1995, the alleged victim contacted the New Orleans Police Department sex crimes unit and reported that she had been sexually assaulted the previous day. She then showed a detective various locations where she had been with Smith, then known to her only as "Mitch."
The State of Louisiana charged defendant, Mitchell Smith, by bill of information with one count of aggravated crime against nature, a violation of La.Rev.Stat. 14:89.1. In a separate bill of information, the State charged Smith with simple rape, a violation of La.Rev.Stat. 14:43. After a bench trial, the court found Smith not guilty of simple rape, but guilty of the lesser offense of simple crime against nature under La.Rev.Stat. 14:89.
Smith filed a Motion in Arrest of Judgment, alleging that La.Rev.Stat. 14:89 is unconstitutionally vague and overbroad, and denies him his right to privacy and fair treatment in relation to others. The trial court denied the motion, and sentenced Smith to three years in the Department of Corrections, suspended, and two years probation.
Mr. Smith appealed to the Fourth Circuit Court of Appeal, asserting the same challenges made in his Motion for Arrest of Judgment. The Court of Appeal reversed Smith's conviction, finding that La. Rev.Stat. 14:89(A)(1) was unconstitutional on its face as an infringement upon the right to privacy expressly guaranteed by Article I, § 5 of the Louisiana Constitution to the extent it criminalized the performance of private, consensual, non-commercial acts of sexual intimacy between individuals legally capable of consent.
Additionally, we have several consolidated cases to determine the constitutionality of La.Rev.Stat. 14:89(A)(2) which prohibits "solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation." All of these cases involve defendants who allegedly solicited undercover police offices to engage in oral sex for compensation. Following the granting of Motions to Quash La.Rev.Stat. 14:89(A)(2) as unconstitutional, the State now seeks review.
Because the aforementioned rulings declared parts of a statute unconstitutional, the State is entitled to have all holdings appealed to this court under La. Const. art. V, § 5(D).

STANDARD OF REVIEW
As a general rule, deferential standards of review apply to factual and other trial determinations, while determinations of law are subject to de novo review. See, e.g., City of New Orleans v. Board of Commrs, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. Interpretation of a constitutional issue of law properly before this court is reviewed de novo.

CONSTITUTIONAL ANALYSIS

Vagueness and Overbreadth
The Fourth Circuit rejected Mr. Smith's claims that La.Rev.Stat. 14:89 is unconstitutionally vague, and overbroad. In our discussions of vagueness, we have held, relying on the summary of jurisprudence found in State v. Phillips, 365 So.2d 1304 (La.1978), that:
The statutory terms defining the crime as "unnatural carnal copulation" involving the "use of the genital organ of one of the offenders" have acquired historically and jurisprudentially a definite *505 meaning. As between human beings, it refers only to two specified sexual practices: sodomy (anal-genital intercourse of a specified nature, ... ) and oral-genital activity (whereby the mouth of one of the participants is joined with the sexual organ of the other participant).
State v. Neal, 500 So.2d 374, 376 (La.1987).
We believe that the relevant case law indicates that La.Rev.Stat. 14:89 is neither unconstitutionally vague[1] nor overbroad.[2] The Fourth Circuit was correct in holding that La.Rev.Stat. 14:89 is neither unconstitutionally vague nor overbroad.

The Right of Privacy Under the U.S. and Louisiana Constitutions
Article I, § 5 (the Privacy Clause) of the Louisiana Constitution of 1974 expressly guarantees that every individual shall be secure against unreasonable invasions of privacy. It is undisputed that the guarantee of the right to privacy contained in the Louisiana Constitution affords more stringent protection of individual liberty than the Fourth Amendment to the Federal Constitution. State v. Perry, 610 So.2d 746, 756 (La.1992). That being said, this court has never determined whether the right to engage in oral or anal sex is protected by the Louisiana Constitution.
Interpreting Louisiana's privacy clause, the Fourth Circuit noted, "This clause is an explicit expression of the principles recognized in the United States Supreme Court decisions on the right to privacy." This clearly is true. However, the United States Supreme Court has never recognized a constitutional right to engage in oral or anal sex. Quite the contrary, it has explicitly rejected a privacy rights claim challenge to sodomy laws, specifically holding that the federal constitution does not prohibit states from enacting laws which prohibit private acts of consensual sodomy between adults. Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).
"Sodomy was a criminal offense at common law and was forbidden by the laws of the original thirteen States when they ratified the Bill of Rights." Bowers, 478 U.S. at 192, 106 S.Ct. 2841.[3] Clearly, Mr. Smith has no federal constitutional right to *506 engage in acts proscribed by La.Rev.Stat. 14:89.
Although we have explicitly rejected claims of La.Rev.Stat. 14:89 violating the federal right to privacy, State v. McCoy, 337 So.2d 192 (La.1976), we have never addressed La.Rev.Stat. 14:89 relative to a right to privacy guaranteed by the Louisiana Constitution. In State v. McCoy, 337 So.2d 192 (La.1976) the defendant attacked La.Rev.Stat. 14:89 as unconstitutional, inter alia, in light of the right of privacy recognized in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). We rejected this position, citing Doe v. Commonwealth's Attorney for Richmond, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), which upheld a Virginia law punishing crimes against nature when committed by consenting partners.
The defense argues that the right to privacy guaranteed by the Louisiana Constitution grants citizens the right to engage in private oral sex. However, the only case law in Louisiana ever holding that the right of consenting adults to engage in private, noncommercial sexual activity free from government interference is protected by the Louisiana Constitution's privacy clause is the Fourth Circuit's opinion reversing the conviction of Mr. Smith.
In Neal, 500 So.2d 374 (La.1987), we reviewed the Crime Against Nature Statute only for the purpose of explaining "solicitations of sexual acts for compensation." Neal, 500 So.2d at 377. In so doing, we left for another day the determination of whether the request for recognition of a right to privacy insulating all private sexual acts for consenting adults. Id. at 378. Later, in State v. Baxley, 633 So.2d 142, 145 (La.2/28/94), we stated:
On the facts presented, it is unnecessary to determine whether LSA-R.S. 14:89(A)(1) is unconstitutional and must be severed from the crime against nature statute. Baxley is charged with the conduct described by LSA-R.S. 14:89(A)(2), which prohibits soliciting compensated crimes against nature. Although the parameters of the state constitutional right to privacy in the sexual area have not been determined, See Neal, 500 So.2d at 378 (Privacy analysis under the federal constitution only, there is no protected privacy interest in public, commercial sexual conduct.)
Today, however, we are asked to declare that our Louisiana Constitution confers upon Louisiana citizens a right to engage in consensual acts which have been prohibited by Louisiana law, in one form or another, for nearly two hundred years. In 1868, when the 14th Amendment was ratified, all but five of the thirty-seven States (including Louisiana) in the Union, had criminal sodomy laws. La.Rev.Stat., Crimes & Offenses, § 5 (1856). In fact, until 1961, all fifty states outlawed sodomy. Bowers, 478 U.S. at 192-93, 106 S.Ct. 2841. There are currently seventeen states, including Louisiana, which prohibit some form of crime against nature between consenting adults.[4] Precedent aside, however, the defendant would have us announce, as the Fourth Circuit did, a constitutional right to engage in oral sex. This we are unwilling to do. If this court were to hold that this constitutional right exists, not only would we misconstrue the Louisiana Constitution, but we would also violate the fundamental principle of separation of *507 powers. There is no constitutional impediment to the legislature enacting La.Rev. Stat. 14:89.

History of Louisiana's Crime Against Nature Statute
A legislative history of La.Rev.Stat. 14:89 prohibitions provides the relevant background necessary to determine whether these prohibitions violate any rights guaranteed by the current Louisiana Constitution.[5]
La.Rev.Stat. 14:89 is a comprehensive crime against nature statute. It covers both heterosexual and homosexual acts, both private and public acts, and both commercial and non-commercial acts. That ban applies only to acts, not to persons or groups. Crime against nature was not originally a crime under the common law of England, being an ecclesiastical offense only.[6] However, it was made a common law felony by statute so early that crime against nature was considered a common law crime in this country.[7] The crime against nature has been prohibited in Louisiana at least since 1805 under the Laws of the Territory of Orleans as a felony carrying a mandatory life sentence.[8] The law was defined only as the "abominable crime against nature" and provided that the crimes "herein before named, shall be taken, intended and construed, according to and in conformity with the common law of England ..."[9]
The Louisiana Revised Statutes of 1856 separated the crime against nature statute from the offense of rape, but continued to provide that "[w]hoever shall be convicted of the detestable and abominable crime against nature, committed with mankind or beast, shall suffer imprisonment at hard labor for life." La.Rev.Stat. Crimes and Offenses, § 5 (1856). This provision, as it was written, was reenacted as part of the Louisiana Revised Statutes of 1870, which also provided that all crimes be construed according to and in conformity with the common law of England. See La.Rev. Stat. of 1870 §§ 788, 976. In 1896 the legislature amended and reenacted La. Rev.Stat. § 788, clarifying that the crime could be committed using the "mouth" of the offender and reducing the possible penalty. 1896 La. Acts § 69 thus read:
Whoever shall be convicted of the detestable and abominable crime against nature committed with mankind or beast with the sectual [sic] organs, or with the mouth, shall suffer imprisonment at hard labor for not less than two years and not more than ten years.
This 1896 amendment specifically included acts involving the mouth. Prior to Act 69 of 1896, buggery and sodomy were the only crimes against nature prohibited by law. State v. Murry, 136 La. 253, 66 So. 963, 966 (1914). Early in the twentieth century, this court recognized that the original "crime against nature" statute covered only sodomy, buggery, and bestiality and that the addition of the phrase "with the sexual organs, or with the mouth," in 1896 was a legislative expansion of the original common law crime. See State v. Murry, 136 La. 253, 66 So. 963 *508 (1914); State v. Long, 133 La. 580, 63 So. 180 (1913); State v. Vicknair, 28 So. 273 (1900). Thus, this court in Murry noted that "it was to include and denounce this particular crime against nature that the statute of 1896 added the common-law crime against nature, `with the sexual organs or with the mouth.'" Murry, 66 So. at 965.
The Statute was next amended as part of the wholesale revision of the Criminal Code in 1942, which provided:
Crime Against Nature is the unnatural carnal copulation by a human being with another of the same or opposite sex or with an animal. Emission is not necessary, and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
Whoever commits the crime against nature shall be fined not more than two thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both. 1942 La. Acts. No. 43, Art. 89.
The Statute remained unchanged until 1975, when the legislature amended it to reflect that crime against nature did not include those acts which would constitute rape. This amendment enacted a provision which, substantively, reflected the present subsections (A)(1) and (B). 1975 La. Acts No. 612, § 89. An amendment to the Statute in 1982 (in addition to changing two of the rape designations) redesignated the sections of the Statute and added the solicitation provision of (A)(2). A review of the legislative history indicates that the legislators enacted the solicitation provision at the request of the New Orleans Police Department in response to a "growing problem in male prostitution." Minutes of the Senate Committee on Judiciary, Section C, July 6, 1982, n.p.

Interpretation of Right of Privacy under the Louisiana Constitution
The only possible remaining justification for concluding that La.Rev.Stat. 14:89 is an unconstitutional exercise of the State's police power to proscribe immoral conduct is that, in Louisiana, the right to engage in consensual and private oral and anal sex, although legislatively determined to be morally reprehensible, is guaranteed under our constitution. As we discussed supra, La.Rev.Stat. 14:89, in one form or another, has existed in some or all of Louisiana dating as long ago as the very early nineteenth century. Crime against nature laws were amended and reenacted in different forms throughout both the nineteenth and twentieth century. However, the prohibitions against oral and anal sex were never specifically repealed.
A constitutional right to privacy obviously cannot include the right to engage in private acts which were condemned as criminal, either by statute or case law interpretation thereof, at the very time the Louisiana Constitution was ratified.[10]
No reasonable Louisiana citizen would consider that the result of voting to ratify a general constitutional guarantee of "liberty" or "privacy" would be to divest that citizen's elected legislators of the right to continue the specific statutory proscription against sodomy or any other criminal act. To the contrary, any reasonable citizen would believe that he or she thereby was retaining the liberty to make such determinations through elected legislators. There is no evidence that the people adopting the Louisiana Constitution at referendum intended to create a constitutional right to engage in oral or anal sex. The question is not one of what is good or *509 wise for Louisiana society, but rather whether the people's majority which adopted the constitution at referendum intended to deprive the legislature of the power to deal with the matter. There is no evidence whatsoever to show an intent to deprive the legislature of this power. A reviewing court should strive "to assure itself and the public that announcing rights not readily identifiable in [a c]onstitution's text involves much more than the imposition of the Justices' own choice of values." Bowers v. Hardwick, 478 U.S. at 191, 106 S.Ct. 2841. This court cannot substitute its own public policy determination for that of the legislature.
The question of whether or not a third party is harmed by a consensual and private act of oral or anal sex is a debate which has been ongoing for many years and is nothing which this court needs to address. The legislature is within constitutional authority to proscribe its commission. Any claim that private sexual conduct between consenting adults is constitutionally insulated from state proscription is unsupportable. Bowers, 478 U.S. at 191, 106 S.Ct. 2841. If an act of sodomy is truly consensual and private, it would be impractical to enforce the statute against the participants, since both would be guilty of the crime of sodomy and, consequently, there would be no victim to file charges and institute a prosecution. See Perryman v. State, 63 Ga. App. 819, 12 S.E.2d 388 (1940); Pruett v. State, 463 S.W.2d 191, 193 (Tex.Crim. App.1970). If the act takes place in private and one of the participants files criminal charges against the other, it can be subject to prosecution as a nonconsensual act. The prosecution against Smith was not initiated because he was accused of engaging in private and consensual sex acts. To the contrary, he was prosecuted only because the victim accused him of committing a forcible act against her. Although the judge only found Smith guilty of receiving oral sex, the fact nevertheless remains that the prosecution was initiated and pursued only because one of the participants initially alleged, and subsequently testified under oath, that she did not consent to the act.
More importantly, however, it would be irresponsible for this court to adopt the novel proposition that a criminal statute's constitutionality depends upon whether anyone other than the actual participants themselves are adversely affected by the proscribed act. Presumably, under such a standard, the state could no longer enforce laws against consensual incest, fornication, prostitution, drugs, etc. See Bowers v. Hardwick, 478 U.S. at 195-96, 106 S.Ct. 2841; See also Powell v. State, 270 Ga. 327, 510 S.E.2d 18, 30 (1998) (Carley, J., dissenting). By equating the general constitutional guarantee of "liberty" or "privacy" to all Louisiana citizens with the right of each individual citizen to engage in self-indulgent but self-contained acts of permissiveness, this court would be calling into constitutional question any criminal statute which proscribes an act that, at least to the satisfaction of a majority of this court, does not cause sufficient harm to anyone other than the actual participants. For instance, the constitutionality of criminal laws which forbid possession and use of certain drugs would become questionable. See Bowers v. Hardwick, 478 U.S. at 195, 106 S.Ct. 2841. There has never been any doubt that the legislature, in the exercise of its police power, has authority to criminalize the commission of acts which, without regard to the infliction of any other injury, are considered immoral.
Simply put, commission of what the legislature determines as an immoral act, even if consensual and private, is an injury against society itself. The law "is constantly based on notions of morality, and if all laws representing essentially moral choices are to be invalidated under the Due Process Clause, the courts will be very busy indeed." Powell v. State, 270 Ga. 327, 510 S.E.2d 18, 30 (1998)(Carley, *510 J., dissenting), (quoting Bowers v. Hardwick, 478 U.S. at 196, 106 S.Ct. 2841). See also Christensen v. State, 266 Ga. 474, 468 S.E.2d 188, 190 (1996); State v. Walsh, 713 S.W.2d 508, 511-12 (Mo.1986).
This court is not considering the wisdom of the law in question. This court is only ruling that it should not, and constitutionally cannot, rule that La.Rev.Stat. 14:89 violates a constitutional right to privacy guaranteed by the Louisiana Constitution. The Fourth Circuit erred by holding that the right of consenting adults to engage in private non-commercial sexual activity, free from government interference, is protected by the privacy clause of the Louisiana Constitution. This court has never recognized such a right, and declines the invitation to do so today.

Separation of Powers under the Louisiana Constitution
"The responsibility of this Court... is to construe and enforce the Constitution and laws of the [State] as they are not to legislate social policy on the basis of our own personal inclinations." Evans v. Abney, 396 U.S. 435, 447, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970). The issue is not whether private and consensual acts of oral and anal sex should be legal or illegal in Louisiana. That issue has been resolved by the legislature in enacting La. Rev.Stat. 14:89. Under this law, commission of unnatural carnal copulation, which has been interpreted to include both oral and anal sex, is against the criminal law of Louisiana, and performance of such an act in private between consenting adults is not exempted from that statutory prohibition. This case does not require a determination of whether laws against oral and anal sex, in general, are wise or desirable. No questions are raised about the right or propriety of state legislative decisions repealing laws criminalizing sexual acts. The issue presented is whether the Louisiana Constitution confers a constitutional right to engage in consensual sexual acts of oral and anal intercourse, and whether this prohibits the legislature from proscribing such conduct.
The Louisiana Constitution is the highest law by which the government of this state was established. As such, our constitution is not be subject to judicial amendment to express whatever a majority of this court happens to conclude at any given time is the more enlightened viewpoint on a particular controversial issue. If our constitution can be judicially amended in such a manner, that constitutes government by this court, rather than government through a constitutional system of which this court is a separate and equal branch. To hold otherwise would be to allow any and all disaffected groups unable to obtain legislative redress need only convince a majority of this court that what they seek is an implicit "right" afforded by the Louisiana Constitution. Our constitution wisely provides for separation of powers, and authorizes the legislature to make public policy determinations in this area. Under our constitution, therefore, the public policy of Louisiana on the practice of oral and anal sex, is a matter within the power of the legislature, not this court.
A violation of the criminal law of this state is not justified as an element of the "liberty" or "privacy" guaranteed by this state's constitution. The freedom to violate criminal law is simply anarchy and, thus, the antithesis of an ordered constitutional system.
Therefore, the only perceptible unconstitutionality in this case is that which would be evident if this court would determine, by acting as social engineers rather than jurists, and elevate our own personal notions of individual "liberty" over the collective wisdom of the voters' elected representatives' belief. That belief has already determined that a prescription on oral and anal sex, consensual or otherwise, is in furtherance of the moral welfare of the public mind. Social engineering is not a valid function of this court.
*511 Neither the Louisiana nor United States Constitution empowers this court to second guess the legislature in its heavy responsibility of weighing competing interests. We are not asked to decide whether legislation is wise or best fulfills relevant social and economic objectives that the state might ideally espouse. Courts do not rule on the social wisdom of statutes nor their workability in practice. Everett v. Goldman, 359 So.2d 1256, 1270 (La.1978). If a crime or a penalty is not defined to reflect current societal values, it is for legislature, not the courts, to reflect this change. It is not a court's role to consider wisdom of the legislature in adopting a statute; it is a court's province to determine only the applicability, legality, and constitutionality of the statute. Progressive Sec. Ins. Co. v. Foster, 97-2985 (La.4/23/98), 711 So.2d 675, 688; Soloco, Inc. v. Dupree, 97-1256 (La.1/21/98), 707 So.2d 12, 16.
Many critics of this law note that this court would not be alone in interpreting a state constitutional right to privacy so broad as to include engaging in oral and anal sex. What this fails to acknowledge, however, is that most states in which consensual sodomy is no longer a crime achieved that result "by legislative repeal of their laws criminalizing sodomy." Powell v. State, 270 Ga. 327, 510 S.E.2d 18, 32 (1998) (Carley, J., dissenting) (quoting Christensen v. State, 266 Ga. 474, 468 S.E.2d 188, 190 (1996)). In the exercise of its police power, the legislature has determined that the long-recognized ban on oral and anal sex should remain in place.
The defense relies upon numerous cases from other jurisdictions, in particular, Powell v. State, 270 Ga. 327, 510 S.E.2d 18 (1998), to support the proposition that La.Rev.Stat. 14:89 is unconstitutional.[11] This court does take notice that Powell v. State was decided only two years after the Georgia Supreme Court ruled that the Georgia sodomy law was constitutional in Christensen v. State, 266 Ga. 474, 468 S.E.2d 188 (1996). We are not bound by foreign courts and consider them only for their persuasiveness. We decline to follow the Georgia Supreme Court, because we believe, to borrow from Mr. Justice Black, "Whether the legislature takes for its textbook [John Stuart Mill, Thomas Acquinas[12] or Lord Devlin[13]] or some other is no concern of ours.* * *[R]elief, if any be needed, lies not with us but with the [General Assembly]." Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).[14]

*512 CONCLUSION
This court is not inclined, and does not intend, to discover new constitutional rights in the Louisiana Constitution. Judge-made constitutional law having little or no basis in the constitution is dangerous and questions the legitimacy of the court. This was illustrated by the conflict between the President and the United States Supreme Court during the Lochner[15] era. Our concern is equally applicable to a conflict between this court the and state legislature. There should be resistance by courts to redefine categories of rights deemed fundamental. Bowers, 478 U.S. at 195, 106 S.Ct. 2841.
Our constitution is not intended to embody a particular sociological theory. Rather, "[i]t is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar or novel and even shocking ought not to conclude our judgment upon the question whether [the state's position] embodying them conflict[s] with the [c]onstitution...." Lochner v. New York, 198 U.S. 45, 76, 25 S.Ct. 539, 49 L.Ed. 937 (1905) (Holmes, J., dissenting).
[I]t is not a proper function for any court to judicially repeal laws on purely sociological considerations[Powell] would do better to address ... the General Assembly for it to determine if modern mores require the alteration or expunction of sodomy statutes.
Griffith v. State, 504 S.W.2d 324, 326 (Mo. App.1974). Because of the longstanding prohibition against oral and anal sex, the judicial discovery of a constitutional right to engage in oral and anal sex, not withstanding this legislative ban, would be based upon a serious misinterpretation of the Louisiana Constitution and is completely contrary to the constitutional principle of separation of powers.

CONSTITUTIONALITY OF LA. REV. STAT. 14:89(A)(2)
A review of the records lodged in the related cases[16] reveals the erroneous impression that the Fourth Circuit's opinion in Smith somehow overruled this Court's decision in State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973, or at least supplanted the rationale of Baxley by holding that oral sex is not unnatural sex.
However, these rulings, patterned after the Fourth Circuit's opinion in Smith, are both misplaced and premature. None of the judgments granting the Motions to Quash set forth plausible reasons for departing from the controlling precedent of Baxley. The trial courts in the instant cases were misguided in their attempts to find the solicitation provision of La.Rev. Stat. 14:89(A)(2) unconstitutional.
First, after evidentiary hearings in State v. Baron, the judge issued a five-page judgment explicating his view that La. Rev.Stat. 14:89(A)(2) violates the Equal Protection Clauses of the state and federal constitutions. Next, State v. Varnado contains a written statement of reasons, explaining subsequent grants of Motions to Quash in other cases arising under La.Rev. Stat. 14:89(A)(2), explaining why the statute violates the Eighth Amendment. Finally, although no written reasons in State v. Garrett, were issued the remarks from the bench reflect agreement that the legislature's provision of different penalties for what he believes to be equivalent sex acts is unconstitutional.
*513 Although decided under different constitutional provisions, the judgments in these cases share a common analytical approach premised on the belief that, given contemporary sexual mores, there is no difference in the "naturalness" (or "unnaturalness") of oral sex, anal sex, and vaginal sex. According to this view, the stark differences in the penalties provided by the legislature for soliciting vaginal sex (i.e., prostitution, a six-month misdemeanor offense defined by La.Rev.Stat. 18:81), as opposed to solicitation of oral or anal sex (a five-year felony offense punished by La. Rev.Stat. 14:89(A)(2)), in reality concern the same or equivalent sexual acts and therefore represent wholly arbitrary and capricious classifications.
Nevertheless, as a matter of law, the trial courts' judgments are invalid because they erroneously cite, and actually even misapply the Fourth Circuit's opinion in Smith, which is now vacated by this opinion, for the proposition that because the Louisiana legislature may not constitutionally declare oral sex as unnatural, the legislature may not punish solicitation of that act in a commercial context. This reason is in direct conflict with binding precedent set by Baxley's explicit recognition of the legislature's prerogative to determine "that solicitation for `unnatural carnal copulation' is more offensive than solicitation for `indiscriminate sexual intercourse [i.e. prostitution].'" Baxley, 94-2982, p.11, 656 So.2d at 980.
As the State's brief aptly observes:
Even assuming that the public morality point advanced by the trial court has any validity, Smith, at best, only arguably suggests that public morality considerations do not suffice as a justification, under the Privacy Clause, to prohibit consenting adults from engaging in private non-commercial oral sex. The public morality considerations noted in Smith were NOT intended to be the basis for concluding that oral and vaginal sex are, in effect, the same conduct. The Smith court clearly intended to suggest that the policing of public morals was an insufficient reason to condemn the private, non-commercial participation in not only vaginal sex (intercourse), but oral sex as well. There is no reasonable interpretation of the Smith decision which even arguably suggests that oral and vaginal sex are in effect the same conduct. (Emphasis in original).
Even assuming, arguendo, that the Fourth Circuit opinion in Smith would still be good law, the same arguments made for privacy rights of non-commercial, consensual sex are simply not as persuasive for commercial sex acts.

EQUAL PROTECTION/EXCESSIVE PUNISHMENT
The State first argues that the trial courts erred by finding La.Rev.Stat. 14:89(A)(2) unconstitutional under Louisiana's Equal Protection clause.[17] Specifically, the trial courts concluded no rational basis exists for imposing harsher penalties for solicitation of crimes against nature than for solicitation of prostitution.
A first offense solicitation of crime against nature conviction under La.Rev. Stat. 14:89(A)(2) is a felony and subjects the defendant to a fine of not more than $2000 or a prison term of not more than five years, or both. In contrast, a first offense solicitation of prostitution conviction under La.Rev.Stat. 14:82 is a misdemeanor and subjects the defendant to a fine of not more than $500 or imprisonment *514 for not more than six months, or both.
Although the trial courts emphasize that crime against nature convictions are punished harsher than prostitution convictions, their determination that an equal protection violation results from the two statutes overlapping lacks merit. This court in Neal, 500 So.2d 374 (La.1987), addressed the constitutionality of solicitation for prostitution and solicitation for crime against nature. In a ruling similar to those issued by the trial courts in the instant cases, the trial court in Neal declared La.Rev.Stat. 14:89(A)(2) unconstitutional because of "the fact that the prosecutor can pick any one of four statutes and not only prosecute but pick the penalty depending on how he feels about an individual where the same exact activity fits every statute." Neal, 500 So.2d at 376. In reversing the trial court, this court held that even assuming the two offenses totally overlapped, we "are not aware of how this statutory arrangement conflicts with any constitutional principle." Id. at 378. This court further noted that "the policy of our criminal code recognizes that there will be overlapping in the code sections and other statutes and expressly provides that in such cases prosecution may proceed under either provision." Id.
More specifically, under La.Rev.Stat. 14:4, when the offender's alleged conduct violates two criminal statutes, the prosecution may proceed under either provision at the discretion of the district attorney. See e.g., State v. Juluke, 374 So.2d 1259 (La. 1979) (district attorney has discretion to choose between prosecuting a defendant for forgery, a felony, or unauthorized use of a credit card, a misdemeanor); State v. Smith, 597 So.2d 1151 (La.App. 1st Cir.), writ denied, 599 So.2d 311 (La.1992) (district attorney has power to prosecute under perjury, a five-year felony, or under a more specific municipal misdemeanor statute pertaining to misleading administrative agencies).
In Baxley, we reiterated that "the punishment of one type of conduct more severely than another similar type of conduct is not, of itself, an equal protection violation." Baxley, 94-2982, p. 9, 656 So.2d at 979. While the constitutional challenge to Baxley involved whether La.Rev.Stat. 14:89(A)(2) arbitrarily and discriminatorily punished homosexuals more than heterosexuals, (based on a comparison of the penalty provisions of the crime against nature statute and the prostitution statute), the holding equally applies to the instant case; the different punishment of two types of different conduct does not constitute an equal protection violation.

CRUEL AND UNUSUAL PUNISHMENT
In holding the sentencing provision unconstitutionally excessive, the trial judges apparently agreed with the defendants' claim that the maximum penalty of five years for violating La.Rev.Stat. 14:89(A)(2) is grossly out of proportion to the severity of the crime when compared to the maximum penalty of six months for a first time violation of La.Rev.Stat. 14:82, the prostitution statute.[18] We disagreed with this in Baxley, 94-2982, p. 10, 656 So.2d at 980 and disagree with this again today. This comparison of alleged excessiveness is relative to the constitutional issue, but is not dispositive of it. In State v. Telsee, 425 So.2d 1251 (La.1983), this court outlined several factors which are useful in determining whether a sentence, by its excessive length or severity, is grossly out of proportion to the underlying crime. This analysis is cumulative and focuses on a combination of these factors. Id. at 1253. These include the nature of the offense and the offender, a comparison of the punishment with sentences imposed for similar crimes, the legislative purpose behind the punishment, a comparison of *515 the punishment with sentences imposed for similar crimes, and a comparison of the punishment provided for this crime in other jurisdictions. Id. at 1253-54. We do not believe anything in La.Rev.Stat. 14:89(A)(2) constitutes a violation of equal protection or an excessive punishment. Simply put, Baxley is still the applicable rule for this issue, and this court hereby reaffirms Baxley and reviews the consolidated cases in light of it.
Louisiana's constitution, unlike its federal counterpart, explicitly prohibits excessive sentences.[19] This court has recently stated "[t]he deliberate inclusion by the redactors of the Constitution of a prohibition against `excessive' as well as cruel and unusual punishment broadens the duty of this court to review the sentencing aspects of criminal statutes." State v. Baxley, 656 So.2d at 977, quoting State v. Goode, 380 So.2d 1361, 1363 (La.1980). Our constitution's explicit protection against excessive punishment "permits us to determine both whether the range of sentences authorized by a criminal statute is excessive ... and whether the sentence of a particular offender is excessive, though within the statutorily prescribed range." Baxley, 656 So.2d at 977 (quoting State v. Guajardo, 428 So.2d 468, 472 (La.1983)). Accordingly, the defendants in the consolidated cases, having been charged with violating the crime against nature statute, have standing to challenge, before trial, the constitutionality of the sentencing provisions of this statute as facially excessive. Baxley, 656 So.2d at 977.
We will consider whether the sentencing provision applicable to La.Rev.Stat. 14:89(A)(2) facially violates the state constitutional prohibition against excessive punishment contained in La. Const. art. I § 20. "A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." Baxley, 656 So.2d at 979 (quoting State v. Dorthey, 623 So.2d 1276, 1280 (La.1993)). "A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice." Baxley, 656 So.2d at 979, (quoting State v. Lobato, 603 So.2d 739, 751 (La.1992)). It is a well established principle that the legislature has the unique responsibility to define criminal conduct and to provide for the penalties to be imposed against persons engaged in such conduct. Baxley, 656 So.2d at 979; Dorthey, 623 So.2d at 1278; State v. Woljar, 477 So.2d 80, 81-82 (La.1985). The penalties provided by the legislature reflect the degree to which the criminal conduct affronts society. State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). Courts must apply these penalties unless they are found to be unconstitutional. Dorthey, 623 So.2d at 1278.
In State v. Telsee, 425 So.2d 1251 (La. 1983), this court outlined several factors which are useful in determining whether a sentence, by its excessive length or severity, is grossly out of proportion to the underlying crime. This analysis is cumulative and focuses on a combination of these factors. Telsee, 425 So.2d at 1253. These factors include the nature of the offense and the offender, a comparison of the punishment with sentences imposed for similar crimes, the legislative purpose behind the punishment, and a comparison of the punishment provided for this crime in other jurisdictions.[20]Id. at 1253-54.
*516 At issue is not only the term of imprisonment provided by the legislature for the offense, but also its classification of crime against nature as a felony, in comparison with the misdemeanor status of prostitution. An attack on the sentencing provision of La.Rev.Stat. 14:89, when compared with the prostitution statute, was addressed in State v. Ryans, 513 So.2d 386 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). In Ryans, the defendant was convicted of solicitation to commit crime against nature and appealed her sentence as "disproportionate to the severity of the crime." Id. at 387. Similar to the arguments raised by the defendants in the instant case, the defendant in Ryans premised her claim of disproportionality on a comparison with the penalties for other sex offenses, particularly La.Rev.Stat. 14:82, prostitution. Id. Despite the disparity in sentencing with respect to La.Rev. Stat. 14:89 and La.Rev.Stat. 14:82, the appellate court in Ryans held that the offense of solicitation to commit crime against nature was not so similar to the crime of solicitation for prostitution to require similar penalties.
The appeals court in Ryans further held that the legislature has the prerogative and duty to define penalties and the "penalties provided by the legislature reflect the degree to which the criminal conduct affronts society." Id. The appeals court noted that the legislature clearly decided to distinguish between indiscriminate sexual intercourse (prostitution) and unnatural carnal copulation (crime against nature) as a reflection of the legislature's belief that society is much more affronted by unnatural carnal copulation than by prostitution. Id.
Although the defendant in Ryans violated the provisions of both La.Rev.Stat. 14:89 and La.Rev.Stat. 14:82, the court held the district attorney had discretion to prosecute under either statute, see La.Rev. Stat. 14:4, and absent an abuse of discretion refused to interfere. Moreover, the Fourth Circuit reasoned that if current social mores do not establish as unnatural the act of oral sex, and therefore more offensive than indiscriminate sexual intercourse, it is for the legislature, not the courts, to reflect this change in attitudes by redefining criminal conduct or changing the penalties. Ryans, 513 So.2d at 388.
Citing Ryans, this court in Baxley, 656 So.2d at 980, again found that the sentencing provision of La.Rev.Stat. 14:89(A)(2) was not unconstitutionally excessive on its face. We further noted that La.Rev.Stat. 14:89(A)(2) imposes no mandatory minimum prison sentence or fine. The instant statute requires only that the sentence not exceed five years and that the fine not exceed $2000. Id.
If we were to find the district courts' rationale to be credible, we would be hard pressed to explain why different grades of rape with different punishments are valid, and even more so, why the legislature can punish distribution of heroin (La.Rev.Stat. 40:966(B)(1)life imprisonment) so much more harshly than distribution of cocaine (La.Rev.Stat. 40:967(B)(4)(b)five to thirty years) or marijuana (La.Rev.Stat. 40:966(B)(2)five to thirty years). All involve the same act, distribution of narcotics.
The last two examples illustrate the relevant discussion for this issue: in enacting La.Rev.Stat. 14:89(A)(2) and 14:82, the Louisiana Legislature exercised its collective wisdom by punishing different types of proscribed conduct differently. The crime against nature statute and the prostitution statute do not necessarily proscribe the same conduct. Baxley, 656 *517 So.2d at 980. Nothing in our constitution "requires a close similarity or proportionality in penalty soley because both crimes deal with sexual immorality." Id. (quoting Ryans, 513 So.2d at 388). Furthermore, the legislature may declare one form of conduct more offensive to the public's morals than another, and punish that conduct more severely. Baxley, 656 So.2d at 980. Nothing prevents the legislature from determining that solicitation of "unnatural carnal copulation" is more offensive than solicitation of "indiscriminate sexual intercourse." Id. It is also significant that La. Rev.Stat. 14:89(A)(2) imposes no mandatory minimum prison sentence or fine. Id. The statute requires only that the sentence not exceed five years and the fine not exceed $2000. If the penalty is not reflective of social norms, it is for the legislature, not the courts, to express this change. Id. For all of these reasons, many of which were previously discussed in detail in Baxley, we again hold that the sentencing provision applicable to La.Rev. Stat. 14:89(A)(2) is not unconstitutionally excessive on its face, that it does not pose an equal protection violation, and that the trial judges erred in holding otherwise.
In light of the faulty rationale underlying the trial courts' rulings, the State's arguments have merit given this court's jurisprudence upholding the constitutionality of La.Rev.Stat. 14:89(A)(2). Baxley is hereby reaffirmed, and remains the binding precedent in Louisiana.

DECREE
The Fourth Circuit Court of Appeal opinion reversing the conviction of Mitchell Smith is hereby vacated in its entirety. The conviction and sentence of Mitchell Smith ordered by the trial court are hereby reinstated. All of the judgments maintaining Motions to Quash in the consolidated cases are hereby vacated as violative of Baxley, which remains the controlling law in the Louisiana jurisprudence. The consolidated cases are remanded to the district court for further proceedings according to law and consistent with the views expressed herein. If a defendant seeks to quash the bill of information on other constitutional grounds, in order to avoid further piecemeal litigation, the trial judges are instructed to rule on all constitutional claims before the courts at that time.
CALOGERO, C.J., dissenting.
La.Rev.Stat. 14:89(A)(1) criminalizes every act of consensual carnal copulation, not including coitus, between parties of the same or opposite sex, married or unmarried, compensated or uncompensated, in public or private. The majority in this case finds the statute constitutional, and in particular, not offensive to the privacy clause of the Louisiana Constitution of 1974. They do so in a case which comes to us after the offense of crime against nature was found as a responsive verdict to a charge of aggravated crime against nature, tried along with simple rape, the latter two crimes as to which the trial judge found Defendant not guilty. Thus, Defendant was never actually charged with simple crime against nature, and in fact, prosecutions for the crime at issue in this case are extremely rare. I do not recall seeing a charge, much less a conviction, in a case like this one, for simple crime against nature in the 27 years that I have been a member of this Court.
In this case, a majority of this Court has opined that there is nothing constitutionally offensive in prohibiting crime against nature whether or not it is for compensation, even in the privacy of one's own "house." I agree with the majority as to crime against nature for compensation, i.e., the legislature can validly proscribe compensated crime against nature. However, as to uncompensated acts, the majority holds that the right to privacy enumerated in Article I, Section 5, of the Louisiana Constitution does not protect the choice by adult citizens to engage in private, consensual acts of sexual intimacy. It is with respect to this holding that I dissent.
*518 Article I, Section 5 of the Louisiana Constitution, entitled "Right to Privacy," states, in relevant part: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." This case presents an issue of first impression as this Court has never determined the parameters of the state constitutional right to privacy in the sexual arena. See State v. Baxley, 93-2159 (La.2/28/94), 633 So.2d 142, 145 (La.1994).
As an initial precept, Article I, Section 5 of the Louisiana Constitution provides, as the majority concedes, all Louisiana citizens greater privacy rights than those provided under the federal constitution. State v. Perry, 610 So.2d 746, 755-756 (La.1992). The Louisiana Constitution expressly contains a "right to privacy," whereas the federal constitution's right to privacy is unenumerated and is believed to be contained in the "penumbra" of related rights guaranteed by the Bill of Rights. See Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). This Court has recognized the greater protections afforded by Article I, Section 5, and has continued to endorse this right, stating that "[o]ur state constitution's declaration of the right to privacy contains an affirmative establishment of a right of privacy" and that this "is one of the most conspicuous instances in which our citizens have chosen a higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution." State v. Hernandez, 410 So.2d 1381, 1385 (La.1982) (emphasis in original); see also, State v. Moreno, 619 So.2d 62, 64-65 (La.1993); Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081, 1092-1093 (La. 1990); Hondroulis v. Schuhmacher, 553 So.2d 398, 415 (La.1989); Parish National Bank v. Lane, 397 So.2d 1282, 1283 (La. 1981); see also Devlin, Privacy and Abortion Rights Under the Louisiana State Constitution, 51 La. L.Rev. 685 (1991); Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La. L.Rev. 1 (1974).
La.Rev.Stat. 14:89 is a comprehensive crime against nature statute, proscribing both heterosexual and homosexual, private and public, and commercial and non-commercial activity, including activity between married couples. I believe that the sweeping nature of the statute, in its prohibition of consensual, private, non-commercial acts of sexual intimacy, invades that area of protected privacy guaranteed by Article I, Section 5 of our state constitution. Consequently, La.Rev.Stat. 14:89 constitutes a governmental invasion into Defendant's right to privacy, and therefore, the State must provide a compelling interest to justify this intrusion. On the record before this Court, the State has advanced no argument, other than citing Bowers v. Hardwick (holding that there is no constitutional right to engage in sodomy), which spoke only of rights vis a vis the federal constitution, and presented no evidence tending to demonstrate that there is a compelling state interest involved, or that La.Rev.Stat. 14:89(A)(1) is a narrowly tailored legislative solution to a legitimate state problem. I am of the opinion that the government has no legitimate interest or compelling reasons for regulating, through criminal statutes, adult, private, non-commercial, consensual acts of sexual intimacy. Thus, I believe that the right to privacy guaranteed by our state constitution protects acts of non-commercial sexual intimacy, such as the sexual act at issue in this case, between adults when done in private.
I am not oblivious to the majority's argument that is it not the province of this Court to legislate social policy or to determine whether the criminal laws enacted by the Legislature are wise or desirable. And surely our legislature is authorized to make public policy determinations and to enact laws to further those policies. However, the legislature cannot validly enact a law that impermissibly infringes upon a constitutional guarantee. Indeed the very *519 reason for elevating certain protections to the level of a constitutional guarantee is to ensure that the state does not infringe upon those protections. And when there is doubt as to the scope of protection afforded by a constitutional guarantee, it is the province, and in fact, the duty of this Court, to interpret the law.
When interpreting our state constitution's privacy clause, it is important to bear in mind that the 1974 constitutional convention delegates added an express privacy protection to our constitution in order to expand the zone of privacy that had already been recognized under the federal constitution. As for determining whether the broad and non-specific term "privacy" includes the sexual acts at issue in this case, a determination within the sole province of this Court, it is of no moment that there was no express mention, at the constitutional debates, of a guarantee to engage in certain sexual acts, for as noted by the Court in Griswold, 85 S.Ct. at 1680-81, many of our most cherished federal constitutional guarantees failed to receive express mention in the Constitution or Bill of Rights.
Accordingly, I dissent from that portion of the majority's opinion finding that the right to engage in adult, private, non-commercial, acts of sexual intimacy between individuals capable of consenting is not protected by our state constitution's privacy guarantee. Thus, I would affirm the court of appeal's ruling that La.Rev.Stat. 14:89(A)(1) is unconstitutional.
Finally, the majority concludes that La. Rev.Stat. 14:89(A)(2), the penalty provision for solicitation for compensation of unnatural carnal copulation, is constitutional. I disagree. As I discussed in my partial dissent in State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973, 981, and for the reasons stated therein, imprisonment, with or without hard labor, for not more than five years is unconstitutionally excessive for a solicitation statute like the one at issue in this case.
LEMMON, J., Concurring in Part and Dissenting in Part.
I agree that the power to make laws is constitutionally vested in the legislative, not the judicial, branch of government. However, the power to determine whether the laws enacted by the legislative branch violate the Louisiana Constitution is vested in the judicial branch. This court does not fulfill its constitutional duty by simply stamping approval on every act passed by the Louisiana Legislature, and thorough constitutional analysis is mandated whenever a legislative act is challenged, even an act that existed at the time of the adoption of the 1974 Constitution.
As to the cases involving the constitutionality of La.Rev.Stat. 14:89 B, this court in the present case simply follows State v. Baxley, 656 So.2d 973 (La.1995), a decision to which I subscribed, and I concur as to the decision in those cases.
As to the Smith case involving the constitutionality of La.Rev.Stat. 14:89 A, I believe that this court, while continually pronouncing deference to the legislative branch, performs an inadequate analysis, under its constitutionally vested judicial function, of whether Section 89 A violates the protection guaranteed to individuals by La. Const. art. I, § 5 to be "secure in his... house."[1]
This court today upholds a law that tells Mitchell Smith that he can be imprisoned for five years[2] for engaging in consensual, non-commercial oral sex with a consenting adult woman (apparently even his wife) when the two are alone in his own home. Notably, this law is one whose violation probably would never have been prosecuted *520 except for the extremely unusual manner in which the case developeda responsive verdict to a forcible rape charge in which the trial court accepted Smith's assertion that the sex was consensual. There will probably never be a direct prosecution charging a violation of Section 89A because the prohibited conduct either is never reported or is universally ignored.[3]
The law this court enforces does not protect persons against unwanted exposure to public sexual behavior, but rather enforces a personal moral fiat that extends by its terms into one's own home. Whether or not one agrees with the moral or religious views of heterosexual oral sex held by the legislators who voted to enact Section 89A is irrelevant to the constitutional analysis. The critical issue is whether those legislators can constitutionally impose those views on a citizen whose non-public conduct, in his own home with a person capable of consenting and without force, coercion or intimidation, does not involve use of contraband and does not cause injury to any other person or to the community. In other words, can the Legislature interfere with an individual's right to be left alone in the security of his or her home, as long as the person is not interfering with the rights of other individuals or of the public in general?
In the present case, this court upholds the prohibition of conduct in one's own home that does not involve contraband[4] and does not involve minors, public sexual exhibition, commercial sex or unwanted sex. The only apparent purpose of the prohibition is to dictate the type of sex that is acceptable to legislators. While this purpose arguably is an appropriate legislative concern when the sexual conduct involves injury or unwanted contact with another, or exposure to the public, or minors or other persons without legal capacity, or commercial activity, this purpose does not justify an intrusion, in the absence of one of these circumstances, into the constitutionally guaranteed security of one's home. Two married persons should be able to choose how they conduct their non-public voluntary sexual relations in the security of their own home; a law that takes that choice away from them is an intrusion by the legislative branch that is constitutionally intolerable. There simply is no legislative interest in the public's health, safety or welfare that warrants such an intrusion.
JOHNSON, Justice, concurring.
I agree with the result reached by the majority but for different reasons. We granted writ of certiorari to determine whether Article I, Section V of the Louisiana Constitution prohibits non-commercial sexual acts performed by consenting adults in private. In my view, none of the cases presented herein advances a right to privacy challenge to LSA-R.S. 14:89(A)(1) and LSA-R.S. 14:89(A)(2) because none of the defendants were prosecuted for private, non-commercial sexual acts between consenting adults.
In my view, defendant, Smith was convicted of committing a nonconsensual act against a female victim. The other defendants were charged with soliciting sex for compensation, a commercial sexual act. I believe that we have yet to be squarely presented with the issue of whether our state constitution protects all private, non-commercial *521 sexual conduct between consenting adults.
Rehearing denied.
CALOGERO, C.J., dissents.
LEMMON, J., dissents and assigns reasons.
LEMMON, J., Dissenting from the Denial of the Application for Rehearing.
The rehearing applications filed in the captioned matters (which involve solicitation of unnatural carnal copulation for compensation)[1] raise a point that was not discussed in the majority opinion or in State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973. The significant issue of the legislative intent, evidenced by the language of the statute itself, should be addressed.
The criminal statutes prior to 1896 prohibited a "crime against nature committed with mankind or beast." In 1896, the legislature, in reenacting the prohibition, added the words "with the sexual organs, or with the mouth." Obviously, a crime against nature then included oral sex, as recognized by this court in State v. Murry, 136 La. 253, 66 So. 963 (1914) (the subsequent addition of the words "with the mouth" was evidence of legislative intent.) However, in the 1942 adoption of the Criminal Code, the Legislature removed the words "with the mouth" from the definition of "unnatural carnal copulation" in La.Rev.Stat. 14:89, possibly indicating an intent to remove oral sex from the defined crime.[2] Since the Legislature retained the references to genital organs and to commission with another human being or with an animal, there does not appear to be any other explanation for the amendment removing the words.
While the majority relies on our earlier cases of State v. Phillips, 365 So.2d 1304 (La.1978) and State v. Neal, 500 So.2d 374 (La.1987)[3], those opinions also did not address the intent of the Legislature's 1942 amendment that removed the words "with the mouth." Because this is an issue which has never been addressed by the court, I would vote to grant a rehearing to resolve the significant issue.
NOTES
[*] Knoll, J. not on panel. Rule IV, Part 2, Section 3.
[1] Art. I, §§ 2, 13 of the 1974 Louisiana Constitution; State v. Azar, 539 So.2d 1222 (La. 1989), cert. denied, Azar v. Louisiana, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48 (1989); State v. Powell, 515 So.2d 1085 (La.1987); State v. Neal, 500 So.2d 374 (La.1987); State v. Pierre, 500 So.2d 382 (La.1987); State v. Lindsey, 310 So.2d 89 (La.1975); State v. McCoy, 337 So.2d 192 (La.1976); State v. Bonanno, 245 La. 1117, 163 So.2d 72 (1964).
[2] The Statute has also withstood constitutional challenges on the basis of overbreadth. As this court noted in Neal, challenges for overbreadth generally are not appropriate "when the impermissible applications of the challenged statute affect conduct rather than speech." Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Neal, 500 So.2d at 377.
[3] With regard specifically to sodomy, the United States Supreme Court in Bowers v. Hardwick traced these ancient roots as follows:

[T]he proscriptions against sodomy have very `ancient roots.' Decisions of
individuals relating to homosexual conduct have been subject to state intervention throughout the history of Western Civilization. Condemnation of those practices
is firmly rooted in Judeao-Christian moral and ethical standards. Homosexual
sodomy was a capital crime under Roman law. See Code Theod. 9.7.6; Code
Just. 9.9.31. See also D. Bailey, Homosexuality and the Western Christian
Tradition 70-81 (1975). During the English Reformation when powers of the ecclesiastical courts were transferred to the King's Courts, the first English statute criminalizing sodomy was passed. 25 Hen. VIII, ch 6. Blackstone described `the infamous crime against nature' as an offense of `deeper malignity' than rape, a
heinous act `the very mention of which is a disgrace to human nature,' and `a crime
not fit to be named.' 4 W. Blackstone, Commentaries *215. The common law of England, including its prohibition of sodomy, [eventually] became the received
[criminal] law of [Louisiana] and the [thirteen] Colonies.
Bowers, 478 U.S. at 196-97, 106 S.Ct. 2841 (Burger, J., concurring).
[4] See Ala.Code §§ 13A-6-63; 13A-6-64; 13A-6-65 (Michie 1993); Ariz.Rev.Stat. Ann. §§ 13-1411; 13-1412 (West 1993); Ark.Code Ann. § 5-14-122 (Michie 1993); Fla. Stat. Ann. § 800.02 (West 1993); Idaho Code § 18-6605 (Michie 1993); Kan. Stat. Ann. § 21-3505 (1989); La.Rev.Stat. Ann. § 14:89 (West 1994); Mass. Gen. Laws Ann. ch. 272, § 34 (West 1993); Minn.Stat. Ann. § 609.293 (West 1987); Miss.Code Ann. § 97-29-59 (1972); Mo. Ann. Stat. § 566.090 (Vernon 1979); N.C. Gen.Stat. § 14-177 (1986); Okla. Stat. Ann. Tit. 21, § 886 (West 1983); S.C.Code Ann. § 16-15-120 (Law.Coop.1985); Tex. Penal Code Ann. §§ 21.01(1), 21.06 (West 1989); Utah Code Ann. § 76-5-403 (1978); Va.Code Ann. § 18.2-361 (Michie 1988). The statutes enacted by Arkansas, Kansas, Oklahoma, and Texas apply only to consensual sex between same sex partners.
[5] The most recent Louisiana Constitution was enacted in 1974.
[6] See, generally, CLARK & MARSHALL, A TREATISE ON THE LAW OF CRIMES, § 11.07 (Callaghan & Co., 1967); PERKINS, ON CRIMINAL LAW, pp. 398-392 (The Foundation Press, 1969); 4 Bl. Comm. § 216; 1 Hale P.C. c. 63; 3 Coke Inst. § 58.
[7] 25 Hen. VIII, ch 6 (1533); repealed by 1 Mary ch 1 (1553); revived by 5 Eliz. I, ch 17 (1562).
[8] In 1805, the state's first crime against nature law was enacted as Orleans Laws, Chapter L., § 2 and Act No. 50 § 2, 1805 La. Acts 46. This law stated:

Every person who shall hereafter be duly convicted of ...
the detestable and abominable crime against nature, committed
with mankind or beast, shall suffer imprisonment at hard labor
for life.
[9] 26 Laws of the La. Territory, Act. L, § 33.
[10] The current Louisiana Constitution was ratified in 1974, approximately 170 years after the Territory of Orleans enacted a prohibition against crime against nature and well over 100 years after statewide statutes were enacted. Even if we would consider the Louisiana Constitution of 1921 instead of 1974, there is no way that an argument could be made that laws prohibiting crimes against nature were enacted after the Louisiana Constitution.
[11] In addition to Powell v. State, 270 Ga. 327, 510 S.E.2d 18 (1998), the Fourth Circuit in this case also relied upon two other cases from foreign jurisdictions:,Commonwealth v. Wasson, 842 S.W.2d 487 (Ky.1992) and Campbell v. Sundquist, 926 S.W.2d 250 (Tenn. App.1996). It should be noted that the Kentucky case relied on language in the Kentucky Constitution which has no counterpart in the Louisiana Constitution and which, if literally or broadly applied, as the Wasson court seemed to be willing to do, would be a formula for anarchy. See Sawatzky v. City of Oklahoma City, 906 P.2d 785, 787 n. 9 (Okla.Crim. App.1995), which rejected the Kentucky decision due to the uniqueness of the Kentucky constitution. It should also be noted that the Campbell case in Tennessee is not a decision of that state's highest court, but only of one intermediate court, with other state courts in Tennessee in apparent disagreement with it. See, for example, Smith v. State, 6 S.W.3d 512 (Tenn.Crim.App.1999). Footnote eight in Smith v. State, 6 S.W.3d 512 states that Campbell v. Sundquist, 926 S.W.2d 250 (Tenn.App. 1996) ignores Justice Scalia's warning regarding extending the scope of an asserted "fundamental right." Wasson and Campbell suffer from the same faulty reasoning as Powell.
[12] Aquinas, Summa Theologica, Q. 96, article 2: "Now human law is framed for a number of human beings, the majority of whom are not perfect in virtue. Wherefore human law does not forbid all vices, from which the virtuous abstain, but only the more grievous vices* * *and chiefly those that are to the hurt of others* * *."
[13] See, DEVLIN, THE ENFORCEMENT OF MORALS (1965).
[14] Mr. Justice Black's opinion in Ferguson actually stated that whether the legislature took as its textbook Adam Smith, Herbert Spencer or Lord Keynes was no concern to the United States Supreme Court. The same premise which applied to allow the legislative bodies to select economic regulations of their choice also applies to allow them to select moral regulations of their choice.
[15] Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). Lochner is often cited as a time when the United States Supreme Court substituted its judgment for the United States Congress.
[16] State v. Murphy, 99-KA-2014; State v. Garrett, 99-KA-2015; State v. Smith 99-KA-2017; State v. Varnado, 99-KA-2019; State v. Harris, 99-KA-2020; State v. Molett, 99-KA-2082; State v. Woods, 99-KA-2083; State v. Baron, 99-KA-2094.
[17] The trial court in Baron commented that La.Rev.Stat. 14:89(A)(2) violated the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution; however, the trial court did not provide reasons in support of this finding. Instead, the trial court based its reasons for granting the Motion to Quash on state equal protection grounds. The Motions to Quash were granted in State v. Woods, State v. Harris, State v. Murphy, State v. Molett, State v. Junius Smith, State v. Varnado because the trial judges believed there were Equal Protection Clause violations.
[18] State v. Garrett and State v. Varnado specifically held that 14:89(A)(2) was an excessive punishment. This was erroneous and completely contrary to Baxley.
[19] La. Const. art. I, § 20 provides, in pertinent part: "No law shall subject any person to euthanasia, to torture, or to cruel, or unusual punishment."
[20] Some states that prohibit crime against nature by consenting adults punish the offense as a misdemeanor with minimal potential prison time. See, e.g., Ala.Code §§ 13A-6-63; 13A-6-64; 13A-6-65 (Michie 1993): Ariz.Rev.Stat. Ann. §§ 13-1411; 13-1412 (West 1993); Ark.Code Ann. § 5-14-122 (Michie 1993); Fla. Stat. Ann. § 800.02 (West 1993); Kan. Stat. Ann. § 21-3505 (1989); Minn.Stat. Ann. § 609.293 (West 1987); Mo. Ann. Stat. § 566.090 (Vernon 1979); Tex. Penal Code Ann. §§ 21.01(1), 21.06 (West 1989); Utah Code Ann. § 76-5-403 (1978). Other states punish the offense as a felony with more potential prison time than Louisiana's statute. See, e.g., Mass. Gen. Laws Ann. ch. 272, § 34 (West 1993) (maximum 20 year imprisonment); Miss.Code Ann. § 97-29-59 (1972)(maximum 10 year imprisonment); Okla. Stat. Ann. Tit. 21, § 886 (West 1983) (maximum 10 year imprisonment).
[1] La. Const. Art. I, § 5 provides in part:

Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. (emphasis added).
[2] Smith was sentenced to three years imprisonment, but the sentence was suspended.
[3] One wonders if the prosecuting witness in the present case will also be charged or if Smith would have been prosecuted at all if the bedroom police or some intruding neighbor had discovered him engaging in the same conduct with his wife in their home. With today's technology, a snooper could possibly monitor a person's bedroom activities in the person's home and report a crime in order to embarrass the snooper's social or political enemy. Aside from the issue of whether such a report should form the basis of a prosecution, the critical issue is whether the conduct may be legislatively criminalized within constitutional limits.
[4] The majority points out that a person can be prosecuted for the private use of illegal drugs in his or her own home. Of course, illegal drugs are contraband.
[1] While I dissented in the consolidated case involving private consensual oral sex, I concurred in the cases involving solicitation for compensation.
[2] Murray noted that "crime against nature" referred only to the common-law crime of sodomy until the amendment of La.Rev.Stat. 788 (1970) by Act 69 of 1896 proscribed also the crime against nature committed "with the mouth." However, we have never discussed the significance of the removal of those words by the legislature in 1942.
[3] The legislative intent in the 1942 removal of the words "or with the mouth" was not discussed in the Phillips and Neal decisions.