STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA04-1589

STATE OF LOUISIANA

VERSUS

JOHN ALDEN VALLERY, SR.

************

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 03-438
HONORABLE ALLEN A. KRAKE, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Chief Judge Ulysses Gene Thibodeaux, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

G. Paul Marx
LA Appellate Project
P.O. Box 82389
Lafayette, LA 70598-2389
**COUNSEL FOR DEFENDANT/APPELLANT:**
    John Alden Vallery, Sr.

James P. Lemoine
District Attorney
P.O. Box 309
Colfax, LA 71417
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    State of Louisiana

**GENOVESE, JUDGE.**

On January 30, 2004, the Defendant, John Alden Vallery, Sr., after being indicted for aggravated rape in violation of La.R.S. 14:42, pled guilty to the amended lesser charge of forcible rape in violation of La.R.S. 14:42.1. He was sentenced to imprisonment at hard labor for a term of thirty-five years, without probation, parole or suspension of sentence. The trial court also designated the offense a crime of violence pursuant to La.Code Crim.P. art. 890.1, and denied eligibility for good time.

Defendant contends his sentence is excessive.

**FACTS**

Because the Defendant pled guilty to the charge of forcible rape, the facts are taken from the transcript of the guilty plea proceedings, as follows:

> On Tuesday the 10th of June, 2003, defendant John Vallery, brutally raped victim with the initials T.A. Victims [sic] told the officers she was asleep and her step-father came into the room, woke her up. Her mother was at work. Mr. Vallery was wearing nothing but a robe, with nothing on underneath. Defendant asked victim to touch him, and she started to yell for her step-brothers who were in the house. These were the defendant's children ages twelve and ten. She yelled for them to come help her. Defendant then yelled at the victim's step-brothers that the victim was having a bad dream, and that they needed to go back into the other room and watch T.V. Defendant at this time had a white handled knife which he held to the victim's throat. Victim momentarily broke away. Defendant grabbed her and drug [sic] her screaming into the . . . another bedroom which was her mother's bedroom. She again tried to get away. The defendant cut her clothing off with this white handled knife. He slapped her on a couple of occasions, placed his hand over her mouth so that she could not scream. Defendant then turned up some loud music so that the other children in the house could not hear the noises that were being made. He then forcibly put his private parts in between the victims [sic] legs and penetrated her. Older step-brother, and defendant's son, confirmed the events of the night, and stated that they watched the event through a crack under the door in the house. They said they saw the defendant on top of the victim naked while the victim was screaming that she hated him and for him to get off of her. The younger step-brother related he and his step-brother [sic] were on the couch watching T.V. and their Dad . . . and their Dad asked them to go get the white handled knife that was kept in the bedroom. Defendant also told the younger son to bring some tissue paper. Defendant then went into the room, which was the victim's room, put the tissue paper that was in a whole [sic] in the door so that the other children could not see in. He then . . . the younger son then heard the victim, after the door

was closed, begin to yell "stop it, stop it, get off of me". At this time he and the older brother went to the door, and the defendant told them the victim was having a bad dream. He told them to go back into the room and watch the T.V., which they did. He later saw the victim run out of the room into the mother's room. Defendant then went into the mother's bedroom and shut the door. The victim continued to scream. Defendant turned the music up real loud. He and the older brother watched through a crack behind the door. Heard his daddy . . . heard his daddy ask the victim to touch his privates. Saw his dad on top of the victim. They were both naked . . . uh . . . naked, kissing her while she was screaming for him to get off of her. Both boys indicate the attack lasted for a considerable amount of time, estimated up to two hours. It was later interrupted by a knock at the door. The defendant was interviewed later at the Sheriff's Office, and at first denied the accusations. Later stated, he had been drinking and that the victim had come into his room and stated that she began fooling around with him. Stated that he had sex with her that lasted about forty-five seconds, at which time he lost his erection, and the sex discontinued. Search warrant obtained by the Sheriff's Office recovered the robe that had what appeared to be blood stains on it, and the knife was found. A physical exam of the child revealed that penetration and tearing [sic]. The child was eleven years old at the time.

## ASSIGNMENT OF ERROR

_____In his sole assignment of error, the Defendant contends that as a first time felony offender the sentence of thirty-five years of imprisonment, without benefits, was excessive. Hence, this court will address Defendant's claim of excessive sentence.

After being charged by indictment with one count of aggravated rape, a violation of La.R.S. 14:42, the Defendant, a first time offender, pled guilty to one count of forcible rape, a violation of La.R.S. 14:42.1. When sentencing the Defendant, the trial court stated:

Mr. Vallery, an eleven year old girl was subjected to the most brutal crime that can be inflicted upon a woman. The fact that disgust [sic] this court, and I believe shocks society even more, is this was your step-daughter. You committed this offense while in the presence of ten year old and a twelve year old, your two sons. As Mr. White has stated . . . is the crime did not happen in a brief fit of passion or, I hate to use those words, it occurred over a period of hours that you subjected this young girl to torture and brutality. Is [sic] this court feels that any thing [sic] less than thirty-five years at hard labor without probation, parole or

1

suspension of sentence, and in your case no good time, is . . . would shock society, and shock the conscience. Accordingly the court sentences you to thirty-five years at hard labor without probation, parole or suspension of sentence, and takes away your good time . . . any good time that you may have coming to you sir. I will inform you that people convicted of crimes like yours generally have a lot of trouble in prison. All right. Prisoner is remanded. You have two years to apply for post-conviction relief after your sentencing conviction become [sic] final.

A person convicted of forcible rape may be sentenced to a term of imprisonment at hard labor for a term of not less than five, nor more than forty years, with at least two of those years to be served without benefit of parole, probation or suspension of sentence. La.R.S. 14:42.1(B).

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331(alteration in original) .

In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for

2

similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

In addition to its apparent consideration of the pre-sentence investigation report, the trial court gave the Defendant opportunities to speak on his own behalf at the Boykinization hearing and at the sentencing hearing. Notably, on neither occasion did the Defendant make any statement.

In his brief to this court, the Defendant asserts that because he is a first time offender, the sentence of thirty-five years of imprisonment without benefits, near maximum for the offense, is constitutionally excessive. This court has held that maximum sentences are usually reserved for the most egregious and blameworthy of offenders. *State v. LeBlanc*, 578 So.2d 1036 (La.App. 3 Cir. 1991), *writ denied*, 620 So.2d 833 (La.1993); *State v. Mallett*, 552 So.2d 28 (La.App. 3 Cir. 1989), *writs denied*, 556 So.2d 1258, 558 So.2d 567 (La.1990) (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)).

In *State v. Whatley*, 03-1275 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, the trial court gave the defendant the maximum sentence possible for a conviction of indecent behavior with a juvenile. However, this court found the defendant was a first time offender whose crime did not warrant the trial court's imposition of the maximum sentence because he was not one of the most egregious types of defendant for whom the maximum sentence was intended. In addition to Whatley's lack of previous

convictions, this court considered the absence of the use of physical violence and the fact that the defendant ceased his conduct upon rebuff by the sixteen-year-old victim to indicate that the defendant should not have received a maximum sentence. *Id*. In the present matter, like the defendant in *Whatley*, the Defendant is also a first time offender. However, unlike the defendant in *Whatley*, the Defendant in this case was convicted of forcible rape, defined by La.R.S. 14:2(13) as a crime of violence. In addition to its high level of physical violence, the conduct of the Defendant was directed against an eleven-year-old girl who futilely attempted resistance. Further, the Defendant did not receive the maximum sentence available under the offense of which he was convicted. Clearly, the circumstances in *Whatley*, which led this court to conclude that a maximum sentence was excessive for that first time offender, are not present in the instant case. Considering the foregoing, the near maximum sentence given the Defendant in the instant matter was not excessive, even though he is a first time offender.

It should also be noted that the Defendant pled guilty to forcible rape when the facts fully supported the original charge of aggravated rape. In *State v. Lanclos*, 419 So.2d 475 (La.1982), the supreme court addressed the issue of whether a maximum sentence was appropriate following a plea agreement. The *Lanclos* court held that because the lesser offense to which the defendant pled did not adequately describe the first time offender's conduct, the trial court did not abuse its discretion in imposing the maximum sentence. Likewise, in this case, the Defendant pled guilty to forcible rape, an offense that does not adequately describe the conduct shown in the record as directed toward the eleven-year-old victim, which conduct is more accurately described as conduct constituting aggravated rape.

Additionally, the Defendant was originally charged with aggravated rape, a

violation of La.R.S. 14:42. By agreeing to plead guilty to forcible rape, a violation of La.R.S. 14:42.1, the Defendant received a significant benefit by reducing his sentence exposure from a minimum of life imprisonment to a maximum of forty years imprisonment. The sentence was within the statutory range for forcible rape.

There is no indication in the record of any plea agreement, or that the Defendant agreed to plead guilty for any particular sentence exposure. Accordingly, in light of the significant benefit gained by the Defendant in agreeing to plead guilty to forcible rape, rather than face an aggravated rape charge, the trial court did not abuse its wide discretion in imposing a sentence of thirty-five years of imprisonment without benefits. *Cook*, 674 So.2d 957.

***AFFIRMED.***