McDONALD, J.
The defendant, James Allen Cooper, Jr., was charged by bill of information with failure to properly register as a sex offender, a violation of La. R.S. 15:542.1.4(A)(1). The defendant pled not guilty. The defendant filed a motion to quash the bill of information, which was denied. The defendant withdrew his former plea of not guilty and entered a Crosby plea of guilty as charged, reserving his right to appeal the court's ruling on the motion to quash. See State v. Crosby, 338 So.2d 584 (La. 1976). The court sentenced the defendant to three years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now *595 appeals, designating one assignment of error. We affirm the conviction and sentence.
FACTS
The defendant completed his sentence for a 2003 conviction for molestation of a juvenile (his eleven-year-old stepdaughter) and was released from River Correctional Center on February 15, 2017. Pursuant to La. R.S. 15:542, the defendant was required to register and provide notification as a sex offender. On February 20, 2017, the defendant went to the St. Tammany Parish Sheriff's Office (Office) and filled out the initial paperwork required for registration. He was staying with his sister, so he listed her Madisonville address as his address. The defendant was informed that he had to return to the Office by March 13, 2017, with proof of address, a State I.D. (listing sex offender status), and $628.62 (money orders) for sex offender notification.
The defendant did not have money for the notification expenses. He asked several family members for the money, to no avail. The defendant never reported back to the Office on March 13, 2017, and he never contacted the Office at any time between his initial registration on February 20 and March 13. During this period, the defendant had gotten into an argument with his sister and left her apartment. An arrest warrant for the defendant was prepared. The defendant's daughter contacted the Office to inform the police the defendant had called her to help him leave the area and to bring him to Mississippi. On March 17, 2017, with the defendant's daughter's help, the defendant was arrested at a gas station in Pearl River.
The defendant did not testify at the motion to quash hearing.
ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues the court erred in denying his motion to quash the bill of information. Specifically, the defendant contends the court failed to consider his indigency and financial reasons for why he could not fulfill his sex offender registration obligations.
The defendant filed a motion to quash the bill of information, wherein he argued he was entitled to such relief under the Fourteenth Amendment to the United States Constitution. According to the defendant, in his motion, he was indigent and made "valiant efforts" to pay his sex offender registration fees and that, as such, he could not be imprisoned simply for being poor.
When a trial court denies a motion to quash, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion. See State v. Odom, 2002-2698 (La. App. 1st Cir. 6/27/03), 861 So.2d 187, 191, writ denied, 2003-2142 (La. 10/17/03), 855 So.2d 765. However, a trial court's legal findings are subject to a de novo standard of review. See State v. Smith, 99-0606, 99-2094, 99-2015, 99-2019, (La. 7/6/00), 766 So.2d 501, 504.
The defendant avers in brief that a person cannot be imprisoned for being unable to meet financial obligations imposed by the registration requirements without first considering his indigency. The defendant points out that he had no job upon being released from prison. He was receiving disability payments, but he did not begin receiving those until one month after being out of prison. The defendant sought financial help from his family, to no avail. The court, according to the defendant, did not consider whether or not he made a good faith attempt to legally obtain the funds necessary to comply with the sex offender registration law. Thus, according *596 to the defendant, under Bearden v. Georgia, 461 U.S. 660, 674, 103 S.Ct. 2064, 2074, 76 L.Ed.2d 221, 234 (1983) and State v. Jones, 2016-0017 (La. 1/13/17), 206 So.3d 871 (per curiam), the failure of the trial court to consider his indigency and to grant the motion to quash violated the defendant's Equal Protection rights under the Fourteenth Amendment.
La. R.S. 15:542.1.4(A)(1) provides:
A person who fails to timely register, fails to timely provide any information required by the provisions of this Chapter, fails to timely and periodically renew and update registration as required by the provisions of this Chapter, fails to timely provide proof of residence, fails to timely provide notification of change of address or other registration information, or fails to provide community notification as required by the provisions of this Chapter, and a person who knowingly provides false information as provided in R.S. 15:542(C)(3), shall, upon first conviction, be fined not more than one thousand dollars and imprisoned with hard labor for not less than two years nor more than ten years without benefit of parole, probation, or suspension of sentence.
In Beardon, 461 U.S. at 672-73, 103 S.Ct. at 2073, addressing whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, the Supreme Court held:
[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.
In State v. Jones, 2015-500 (La. App. 5th Cir. 12/23/15), 182 So.3d 1218, 1219, the defendant pled guilty under Crosby for failure to maintain his registration as a sex offender by failing to provide community notification pursuant to La. R.S. 15:542. The defendant in Jones took writs, and the supreme court granted in part and remanded to the trial court for a hearing to determine if the defendant was indigent. Jones, 2016-0017 (La. 1/13/17), 206 So.3d 871 (per curiam). Specifically, the supreme court, Id., opined:
In the event that defendant is found to be indigent, the trial court is ordered to reconsider its ruling denying the motion to quash in light of Bearden v. Georgia, 461 U.S. 660, 672, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983) (only if convict "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay," could state punish him therefor with imprisonment). See also State v. Jones, 15-500, pp. 1-7 (La.App. 5 Cir. 12/23/15), 182 So.3d 1218, 1223-26 (Wicker, J., dissenting). In addition, in the event that defendant is determined to be indigent and entitled to relief under Bearden, he *597 should be given the opportunity to withdraw his guilty plea.
Jones, 206 So.3d at 871-72.
In the present case, while the court at the motion to quash hearing did not specifically announce whether or not it found the defendant indigent, it clearly considered the defendant's indigency status. Much if not most of the hearing was about the defendant's effort to try to obtain funds.
The defendant was released from River Correctional Center on February 15, 2017. He filled out a sex offender registration form on February 20, 2017. His next scheduled registration was on August 21, 2017. At the motion to quash hearing, several witnesses for the defendant testified. Mary Martin, the defendant's sister, testified that the defendant, upon his release from prison, went to live with her in her apartment. On his sex offender registration, the defendant put her address. The defendant had disability benefits, according to Mary, but gave up those benefits to make more money fishing (as a commercial fisherman). The defendant had property, but lost it because taxes had not been paid on it during the five years the defendant was in prison. The defendant had three days to register as a sex offender when he was released from prison. The defendant registered within this time, and Mary paid the required $60 fee. The defendant, however, also owed $585 for flyers and $110 for newspaper notifications. Mary was not able to give the defendant the money for these two other requirements. Mary got into an argument with the defendant and left her apartment for six days. When she returned, the defendant was gone. According to Mary, the defendant's "bags and stuff" were still at her apartment; and the defendant had gone to their (other) sister's house. Mary testified that the defendant did not try to find a job when he was released from prison because he was very sick.
On cross-examination, Mary indicated that she had provided a written statement to Deputy Angelina Cook, with the St. Tammany Parish Sheriff's Office, who registered the defendant and was responsible for the defendant's continued obligations required under the sex offender registration law. The statement, written by Mary on March 14, 2017, provided: "Jim and I had words on 3-5 so I decided to leave on Monday around 430 pm[.] He was at my appartment [sic] when I left. I returned on home on 3-12 he was not at apartment and some of his belongings was gone." When asked about the defendant's belongings, Mary indicated she had found the defendant's bag under her bed, so she called Deputy Cook back to inform her of that.
Dennis Cooper, the defendant's brother, testified at the hearing that the defendant had asked him for money for the registration fees, but Dennis did not have the money because he had been totally disabled since 2012. In the past, Dennis had done commercial fishing with the defendant. Dennis had not been aware that the defendant had left Mary's apartment.
Elizabeth Cooper, the defendant's ex-wife, testified at the hearing that the defendant had asked for money, but she could not afford to give him any money. Elizabeth indicated that the defendant was required to continue to register (as a sex offender) because he had molested her daughter.
Joseph Cooper, the defendant's son, testified at the hearing that the defendant had asked him for money for the registration fees. Joseph, however, was a college student and did not have the money.
Deputy Angelina Cook testified for the State. According to her testimony, after being released from prison on February *598 15, 2017, the defendant went to her office on February 20, 2017 and filled out all the forms to register as a sex offender. He paid the $60 annual registration fee and put his sister's (Mary) address in Madisonville as his address. From that date (February 20), the defendant had twenty-one days to complete community notifications and obtain a Louisiana State I.D. card. The community notifications included postcards to mail out to surrounding areas of his residence, as well as newspaper notifications. The defendant was given a packet of information, and Deputy Cook went over that information with him. The defendant was also given the law of La. R.S. 15:542.1.2 in its entirety, which is signed and dated as acknowledgment of receipt thereof. Under the law, the defendant had three days to report any change in address.
The defendant was instructed to return to Deputy Cook's office with the fees on March 13, 2017. Between February 20, 2017 and March 13, 2017, the defendant made no contact with Deputy Cook or her office. According to Deputy Cook, on or around March 13, 2017, Corporal Bums of Special Operations went to the defendant's address (Mary's apartment). Mary was home, but the defendant was not there. Corporal Bums spoke to Mary, who said the defendant had left the residence and took his belongings with him; she was not sure where he had gone. Following this, Deputy Cook began calling Mary's apartment to make contact with the defendant. On one of Deputy Cook's calls, Mary answered and told the deputy that around March 6, Mary and the defendant had gotten into a verbal altercation. She left the apartment and, when she returned, the defendant had left, taking with him a majority of his personal belongings. The following day, Mary went to Deputy Cook's office and provided a written statement (discussed above).
Then on March 16, 2017, the defendant's daughter, Chassity, called Deputy Cook. Deputy Cook testified that Chassity told her she had heard the defendant was back in the area. The defendant had made contact with Chassity and had asked her for help to leave the area because he knew he was wanted by law enforcement for not having gone in to complete his registration. Chassity was living in Mississippi. Thus, according to Deputy Cook, the defendant had asked his daughter to come get him and bring him to Mississippi. At this point, Deputy Cook had still not had any contact or communication with the defendant. Deputy Cook explained that there are times when sex offenders contact their office to inform them they are having trouble paying the fees. They will do their best, according to the deputy, to work with the offenders to help them come into compliance. Deputy Cook also noted her office would offer an extension of time, but the offender has to ask for the extension.
On March 17, 2017, Deputy Cook prepared an arrest warrant for the defendant. On this same day, Chassity went to Deputy Cook's office to corroborate her phone statement. Deputy Cook testified "And it was at that point it was determined that he had gone to not just one address, he had gone to one address without making notice to our office and then again attempted to abscond from St. Tammany Parish."
Deputy Matthew Tanner, with the St. Tammany Parish Sheriff's Office, testified at the hearing that on March 17, 2017, he was dispatched to a gas station on La. Hwy 41 in Pearl River to meet Chassity. Chassity told Deputy Tanner that she was going to go get the defendant and bring him back to the gas station to turn him in. Chassity left and returned with the defendant, who was arrested and Mirandized . Deputy Tanner placed the defendant in the back of his patrol unit to transport him to jail. Without any prompting *599 by Deputy Tanner, the defendant insisted that he had paid his fees. Further, according to the deputy, the defendant said he knew he did not update his information because he owned two residences in St. Tammany Parish.
Based on the foregoing, we find no abuse of discretion in the court's denial of the motion to quash. The defendant may have been indigent, but any alleged indigency was not the cause of his non-compliance with the sex offender registration law. Rather, the defendant willfully and deliberately failed to make any contact with Deputy Cook after leaving his sister's apartment, which the defendant had been using as his registered address. More importantly, the defendant attempted to, or at least made plans to, abscond from Louisiana to avoid his registration obligations. We find Bearden, 461 U.S. at 662-63, 103 S.Ct. at 2067, distinguishable in that, there, the defendant paid $200 (in restitution) of the $750 he owed. He worked, but about one month later, was laid off from his job. The defendant then notified the probation office that he was going to be late with his payment because he could not find a job.
There are none of those factors in Bearden present herein. Beyond the initial $60 yearly registration fee (paid by Mary), the defendant made no attempt to pay anything. Based on the record before us, the defendant asked a few family members for money, but from the record before us, these entreaties appeared to be the extent of the defendant's effort to obtain any money. Nothing in the record indicated the defendant worked or even tried to find work; yet the initial sex offender registration form he filled out indicated he was a brick layer employed by someone named Jason Brown. The defendant failed to contact Deputy Cook's office a single time after his initial visit to inform her he was having trouble coming up with the money he owed, or that he had changed his address. Cf. Jones, 182 So.3d at 1224-25 (Wicker, J. dissent). As the Bearden Court, 461 U.S. at 668, 103 S.Ct. at 2070, opined:
This distinction, based on the reasons for non-payment, is of critical importance here. If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. (Citation omitted.)
We find the court did not err or abuse its discretion in denying the defendant's motion to quash the bill of information. Accordingly, this assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.