Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,609-KA
No. 53,610-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

MORGAN GRAY MCGOUGH                         Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 67,315

Honorable Thomas Wynn Rogers, Judge

* * * * *

H2 LEGAL, LLC                               Counsel for Appellant
By: P. Heath Hattaway

JOHN FITZGERALD BELTON                      Counsel for Appellee
District Attorney

LEWIS ALLEN JONES
ERIC MICHAEL MAHAFFEY
Assistant District Attorneys

* * * * *

Before PITMAN, GARRETT, and COX, JJ.

GARRETT, J., concurs with written reasons.

**COX, J.**

This criminal appeal arises from the Third Judicial District Court, Lincoln Parish, Louisiana. The defendant, Morgan Gray McGough, was convicted by a jury of unauthorized entry into a business and public wearing of a mask. The defendant now appeals, challenging only the constitutionality of Louisiana's public mask statute, La. R.S. 14:313, as applied to him under the circumstances of the instant offenses. For the following reasons, we affirm McGough's conviction and sentence for violation of La. R.S. 14:313.

## FACTS

The circumstances leading to the arrest of McGough are not in dispute. On June 23, 2015, McGough parked his 2003 Honda Accord in the parking lot of Wiley Tower at 5:30 a.m. McGough painted the following on the Honda, "This is for the 22 vets a day that commit suicide," "We the people," and "We are one – free." McGough stated in court that "Fine Art was on the side" and he painted two eye balls on the other side of the Honda. McGough testified that after parking the Honda at Wiley Tower, his roommates picked him up and he drove his work truck to Frosty Factory of America, a place of business in Lincoln Parish.

McGough was previously employed at Frosty Factory, but was terminated and advised by the owner not to return to the property. McGough drove through an open bay door of the Frosty Factory warehouse and walked around wearing a Guy Fawkes mask.[1] While there, he told the employees that

---

[1] Sergeant Justin Brown of the Ruston Police Department described the mask for trial court as the mask worn in the movie, *V for Vendetta*. He states the mask was worn by British revolutionaries years ago. The mask was submitted into evidence. It is a white mask that covers the entire face. There are two cutouts for eyes. The mask has a thin black mustache and goatee. Sgt. Brown was asked if he had seen the mask work in public protests, and he answered yes.

2

they could all leave. The mask McGough wore was introduced into evidence. The testimony at trial indicates that McGough was not agitated or angry and, while some employees were initially alarmed, McGough was docile and left the establishment when asked without incident.

Tom Hebing, one of the Frosty Factory employees, testified that he knew McGough by his "wrestler's build," he spoke to McGough, and shook his hand. Cynthia Ellis, a manager at Frost Factory, testified that she asked McGough to remove the mask and he complied. When Ms. Ellis told McGough "we gotta go" because she did not want him to get in "any more trouble," he said that he was "out terrorizing the town." Ms. Ellis testified that she escorted McGough to his truck, he gave her a hug, and he left the premises.

After leaving Frosty Factory, McGough drove his work truck to the parking lot of Wiley Tower on the Louisiana Tech University campus. McGough testified that he went to the parking lot to check on his Honda that was parked there. Before McGough reached Wiley Tower, Louisiana Tech University Assistant Chief of Police Bill Davis arrived at the parking lot in order to investigate the painted Honda. Asst. Chief Davis testified that he parked his vehicle behind McGough's painted Honda and could only read the words "commit suicide" on the vehicle. He stated that while speaking with professors and University personnel on the steps of Wiley Tower, a white truck pulled up beside the painted vehicle. When officers approached the pickup truck driven by a man (later identified as McGough), the man picked up the mask and put it over his face. Asst. Chief Davis testified that the mask completely covered the man's face. The officers were alarmed and took "a step back." Asst. Chief Davis further testified that he was concerned that the

3

man might be armed and was proceeding cautiously; at that point, the man was not identifiable. When the man exited his truck, officers told him to remove the mask and he immediately complied and put the mask back in the truck. McGough followed the commands of the University Police officers and was restrained without incident.

Sergeant Justin Brown with the Ruston Police Department testified that after McGough was taken into custody, McGough told Sgt. Brown that "he was at the Frosty Factory just making a statement." Sgt. Brown asked McGough why he was wearing the mask and McGough replied that he was "making a powerful statement."

McGough testified at trial and identified the mask he was wearing as a Guy Fawkes mask as seen in the movie "V for Vendetta." He testified that his comment to Ms. Ellis that he was out "terrorizing the town" was very sarcastic and he was not angry at anyone. McGough stated that he was trying to make a video with his phone when Asst. Chief Davis approached his truck in the Wiley Tower parking lot. McGough testified that he put on the Guy Fawkes mask and got out of the truck. He stated that when he was instructed to take the mask off, he did so. When asked if he calculated to conceal his identity by wearing the mask, McGough answered, "I calculated it would make a powerful statement." McGough explained:

> I basically set myself out to be a martyr -- to show why we cannot give up our – civil rights. Everybody knows what is going on in the world, the terrorists and all these other -- … crazy things.
> ….
>
> And, so – so, if we – if we give up our essential liberties for a little bit of safety, it doesn't keep us safe. Essentially what you're saying is if my rights are allowed to be violated or if somebody else's rights are allowed to be violated that everybody's

rights are allowed to be violated, right? Our constitutional rights are like a spare tire, if you will. You don't know you need them until you need them. And that's essentially what this is about. I tested the due process of Lincoln Parish and this is what happened.

During trial, part of McGough's audio testimony from the preliminary examination was introduced and played for the jury. McGough testified that on June 23, 2015, he "set out to make a very powerful statement." McGough stated that he wanted to use his "actions not so much as writing a book or making a poster, making a video…I wore a mask that is commonly worn by the group Anonymous, right?" McGough went on to discuss an alleged "terror cell" and the government's attack on the group Anonymous, challenging the fact that he had been jailed for 13 months without bail for these offenses.

On October 30, 2017, the first day of trial, defense counsel filed a motion to quash the amended bill of information charging McGough with a violation of La. R.S. 14:313, Louisiana's mask statute. McGough argued that the matter was one of first impression in Louisiana and that the statute was unconstitutional as applied to him, abridging his right to freedom of expression via written communication and prohibiting conduct expressive of ideas (symbolic conduct). McGough relied on *Spence v. Washington*, 418 U.S. 405, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974) and *United States v. O'Brien,* 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968). The trial court deferred ruling on the constitutional issue until sending the case to the jury in order to allow the Louisiana Attorney General to provide argument. The Attorney General's office did not provide argument before the trial court ruled on the motion. Just prior to submitting the case to the jury, the trial court denied the motion to quash citing *United States v. O'Brien, supra*, *Nat'l Ass'n for Advancement of*

*Colored People v. State of Ala. ex. rel. Patterson,* 357 U.S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958), and *Church of American Knights of the Klu Klux Klan v. Kerik*, 356 F. 3d 197 (2d Cir. 2004), *cert. denied*, 543 U.S. 1020, 125 S. Ct. 655, 160 L. Ed. 2d 495 (2004). The trial court briefly stated that, based on those cases, it believed the statute to be constitutional as applied to these facts and noted that those cases require specific intent to conceal one's identity in wearing the mask. The trial court allowed a charge to the jury to that effect, requiring specific intent.

The jury found McGough guilty on both counts, thus, implicitly finding specific intent to conceal his identity by wearing the Guy Fawkes mask on June 23, 2015 in the parking lot of Wiley Tower. During sentencing the trial court found the following:

> The jury found that [McGough] had a specific intent to hide his identity. No matter how fleeting this anonymity may have been or how innocent, he was, nevertheless, found guilty. The Court recognizes Mr. McGough's actions could be construed as those of one attempting to deliver a constitutionally protected message, not one attempting to hide his identity for sinister or nefarious purpose. Veteran's rights and the plight of our Veterans is a noble cause. Unfortunately, Mr. McGough was misguided in the way he chose to champion that cause.
>
> ....
>
> Mr. McGough has been his own worst enemy for too long a time, but he has demonstrated a dramatic change for the good during the past year. He is intelligent, talented and passionate. He can contribute a lot to society, but only if he is diligent in taking his medication and humble in seeking and receiving help when he needs it.

At sentencing, the trial court noted the following about McGough. McGough enlisted in the United States Army at age 20. McGough is a seven and one-half year army veteran who served three tours in Iraq, totaling 38 months. Following his last tour in Iraq, McGough was honorably discharged.

Unfortunately, following his discharge, McGough began experiencing mental health issues and began drinking alcohol to excess. He was eventually treated in-patient at a VA hospital and was ultimately diagnosed with bipolar disorder and prescribed medications. McGough continued counseling through the VA until the date of the instant offenses. The trial court noted that McGough had multiple misdemeanor offenses that appeared to be alcohol related and that the instant offenses were the result of McGough's failure to take his prescribed medication.

The trial court then sentenced McGough to 6 months imprisonment on each conviction, to be served concurrently. McGough was given credit for time served and released. McGough now appeals. He does not challenge his conviction for unauthorized entry of a business or the sentence for that conviction. His sole argument on appeal is the constitutionality of the mask statute as applied to him.

**DISCUSSION**

McGough argues his wearing of the mask was protected symbolic speech because he intended to convey a particularized message and it was likely that the viewers of the message would understand the message. *Spence, supra*. He notes that the nature and context of the expression are important to the analysis. *Spence, supra*. In addressing the standard by which to determine constitutionality in this case, McGough cites *Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) and submits that the government's need to prohibit the expressive conduct must be justified by a "substantial showing" of that need that must "survive the most exacting scrutiny." McGough argues that the lesser standard set forth in *O'Brien, supra*, does not

7

apply here because the government's asserted interest (to readily ascertain one's identity) is related to the suppression of the expression. McGough argues that the "state cannot show the presumed interest for prohibiting the wearing of any mask in public was implicated on the facts presented under this case."

McGough argues that he intended to convey a powerful message by wearing the Guy Fawkes mask, which he told the officers on Jun 23, 2015. In addition, McGough's intent to make a "powerful statement" was recorded in the police report of the incident. Next, McGough highlights the statements of the trial court at sentencing. McGough argues that the particular message he intended to communicate was understood by those who viewed it. Namely, McGough references the preliminary examination where an officer testified that he recognized the mask from the movie "V for Vendetta" and noting that the trial court was also aware of the message conveyed by the Guy Fawkes mask.

McGough maintains that his presence in a public place while wearing a Guy Fawkes mask to express a particular message and his positioning next to his vehicle, which conveyed the same particular message, was protected First Amendment speech. McGough refers to his vehicle as an "art installation" which was placed in the parking lot to convey the same message as his wearing of the Guy Fawkes mask. He claims both are protected expressions.

The State makes a brief argument that McGough's freedom of expression was not impinged; rather, McGough's mechanism of choice in making that expression is at issue. The mechanism of McGough's choice, the wearing of a mask in public, is prohibited by statute and the jury found him

guilty of violating that statute. The State suggests that McGough defeats his own argument by characterizing his vehicle as an art installation which conveyed a message while also stating that his message will be "completely lost" if he is not allowed to wear the mask. The State further argues that McGough fails to address the statutory exceptions provided by La. R.S. 14:313, none of which are applicable to this case.

Regarding the alleged particularized message McGough intended to convey via the Guy Fawkes mask, the State points to the message on the vehicle, i.e., veterans commit suicide every day, the message cited by McGough in brief, i.e., the danger of government oppression of civil liberties, and a third message cited by McGough in brief, i.e., the mask is a warning, though not defined in any way. The State queries which is the intended message by the covering of the full face by the Guy Fawkes mask. The State notes that, while nature and context are relevant considerations, McGough fails to address how, without more, the otherwise empty parking lot of Wiley Tower at Louisiana Tech on June 23, 2015, provides a nature and context supportive of his wearing a full facial covering/mask to convey a message.

The State submits that the *O'Brien* standard is applicable and the State's interest of protecting its citizens by prohibiting persons from wearing masks that conceal or hide identity and prevent them from being readily recognized is unrelated to the suppression of the expression. According to the State, this is evidenced by the legislature's inclusion of exceptions to the mask prohibition for, *inter alia*, religious, medical, or cultural reasons. The State argues that McGough has failed to meet his heavy burden that La. R.S. 14:313 is unconstitutional as applied to him.

9

Although a trial court's ruling on a motion to quash will generally not be reversed absent an abuse of discretion, a trial court's legal findings are subject to a *de novo* standard of review. *State v. Batiste*, 05-1571 (La. 10/17/06), 939 So. 2d 1245; *State v. Smith*, 99-0606 (La. 7/6/00), 766 So. 2d 501. The interpretation of a constitutional issue of law is reviewed *de novo. Id.*

In reviewing rulings on motions to quash where there are mixed questions of fact as well as law, a trial judge's ruling on a motion to quash is discretionary and should not be disturbed absent a clear abuse of discretion. *State v. Stanley*, 49,683 (La. App. 2 Cir. 1/14/15), 161 So. 3d 1034. Where the trial court's decision to quash the bill of information was based on its interpretation of a statute as applied to a defendant and the specific facts of case, there may be mixed questions of law and fact.

Here, the parties do not dispute the facts surrounding McGough's arrest and convictions, thus, arguably, the trial court did not make findings of fact but relied on the uncontroverted evidence in reaching its decision. The Louisiana Supreme Court has reviewed "as applied" constitutional challenges under the *de novo* standard of review. See *State v. Draughter*, 13-0914 (La. 12/10/13), 130 So. 3d 855.

In order to properly challenge the constitutionality of a statute, "first, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specifically pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized." *State v. Hatton*, 07-2377 (La. 7/1/08), 985 So. 2d 709.

The version of La. R.S. 14:313 that was in effect on June 23, 2015, provided:

A. No person shall use or wear in any public place of any character whatsoever, or in any open place in view thereof, a hood or mask, or anything in the nature of either, or any facial disguise of any kind or description, calculated to conceal or hide the identity of the person or to prevent his being readily recognized.

B. Whoever violates this Section shall be imprisoned for not less than six months nor more than three years.

C. Except as provided in Subsection E of this Section, this Section shall not apply:

(1) To activities of children on Halloween, to persons participating in any public parade or exhibition of an educational, religious, or historical character given by any school, church, or public governing authority, or to persons in any private residence, club, or lodge room.

(2) To persons participating in masquerade balls or entertainments, to persons participating in carnival parades or exhibitions during the period of Mardi Gras festivities, to persons participating in the parades or exhibitions of minstrel troupes, circuses, or other dramatic or amusement shows, or to promiscuous masking on Mardi Gras which are duly authorized by the governing authorities of the municipality in which they are held or by the sheriff of the parish if held outside of an incorporated municipality.

(3) To persons wearing head covering or veils pursuant to religious beliefs or customs.

D. All persons having charge or control of any of the festivities set forth in Paragraph (C)(2) of this Section shall, in order to bring the persons participating therein within the exceptions contained in Paragraph (C)(2), make written application for and shall obtain in advance of the festivities from the mayor of the city, town, or village in which the festivities are to be held, or when the festivities are to be held outside of an incorporated city, town, or village, from the sheriff of the parish, a written permit to conduct the festivities. A general public proclamation by the mayor or sheriff authorizing the festivities shall be equivalent to an application and permit.

E. Every person convicted of or who pleads guilty to a sex offense specified in R.S. 24:932, is prohibited from using or wearing a hood, mask or disguise of any kind with the intent to hide, conceal

or disguise his identity on or concerning Halloween, Mardi Gras, Easter, Christmas, or any other recognized holiday for which hoods, masks, or disguises are generally used.

Statutes prohibiting the wearing of masks generally fall into one of two categories. The first category consists of statutes that prohibit public mask wearing where the wearer's identity is concealed with the intent to interfere with the civil rights of another. Laws that fall into the second category, of which La. R.S. 14:313 is an example, prohibit public mask wearing that conceals the identity of the wearer, but provide for certain specific exceptions. *Hernandez v. Superintendent, Fredericksburg-Rappahannock Joint Sec. Ctr.*, 800 F. Supp. 1344 (E.D. Va. 1992), *appeal dismissed*, 8 F. 3d 818 (4th Cir. 1993)(*unpublished*), *cert. denied.*, 510 U.S. 1119, 114 S. Ct. 1071, 127 L. Ed. 2d 390 (1994). The *Hernandez* court noted that "commentators have traced the origin of both categories of laws to efforts to combat the [Klu Klux] Klan's illegal, violent activities. Because the reach of these statutes sometimes extends to expressive conduct of various kinds, it is not surprising that they have been the focus of variety of constitutional attacks…."

In addressing matters of free speech, courts must be mindful that "[i]f there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Johnson, supra* (burning the American flag during political protest rally was constitutionally-protected speech). Yet freedom of speech under the Constitution is not absolute. The threshold issue in First Amendment analysis, therefore, is whether the "speech" in question is constitutionally protected. It is well-settled that the First Amendment's protection of freedom of speech extends beyond traditional

verbal and written communication; it also protects certain forms of

communicative conduct or "symbolic speech." *Johnson, supra; Schact v.*

*United States*, 398 U.S. 58, 90 S. Ct. 1555, 26 L. Ed. 2d 44 (1970) (wearing

American military uniforms in drama criticizing United States' involvement in

Vietnam War); *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S.

503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969) (wearing black armbands as protest

against United States' involvement in Vietnam War). The Supreme Court

stated in *Johnson*:

> The First Amendment literally forbids the abridgement only of
> "speech," but we have long recognized that its protection does not
> end at the spoken or written word. While we have rejected "the
> view that an apparently limitless variety of conduct can be labeled
> 'speech' whenever the person engaging in the conduct intends
> thereby to express an idea," *United States v. O'Brien*, [391 U.S.
> 367, 376, 88 S. Ct. 1673, 1678, 20 L. Ed. 2d 672 (1968)], we have
> acknowledged that conduct may be "sufficiently imbued with
> elements of communication to fall within the scope of the First
> and Fourteenth Amendments." *Spence* [*v. Washington*, 418 U.S.
> 405, 409, 94 S. Ct. 2727, 2730, 41 L. Ed. 2d 842 (1974)].

The test for determining whether conduct qualifies as protected "speech"

is whether "[a]n intent to convey a particularized message was present, and

[whether] the likelihood was great that the message would be understood by

those who viewed it." *Church of Am. Knights of the Ku Klux Klan v. Kerik,*

*supra*; *Johnson, supra*. Thus, proof of these three elements is required to

establish that conduct is communicative or expressive within the meaning of

First Amendment analysis: (1) requisite intent; (2) a particularized message;

and (3) likely understanding by viewers. The nature and context of the conduct

are essential considerations in the application of this test. See *Spence*, *supra*

(flag hung upside down with peace symbol attached displayed at a time

roughly simultaneous with the Kent State tragedy and United States' incursion

into Cambodia was protected expression); *Tinker v. Des Moines Indep. Community School Dist.*, *supra* (black armbands worn in a school environment conveyed unmistakable message of concern about Vietnam hostilities). If the conduct in question is not communicative or expressive under this test, no First Amendment protection attaches. Accordingly, a First Amendment challenge to a statute proscribing that conduct fails. If, on the other hand, conduct is found to be communicative or expressive, a court must then proceed to consider whether a statute proscribing that conduct impermissibly restricts symbolic speech.

Generally, the government "has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." *Johnson*, *supra*; *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984); *O'Brien*, *supra*. What the government may not do, however, is proscribe certain conduct because it has expressive content; hence, any law directed at the communicative aspect of conduct must be justified by a substantial showing of need by the government, a showing that must survive "the most exacting scrutiny." *Johnson, supra* (quoting *Boos v. Barry*, 485 U.S. 312, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988)). Where, on the other hand, the government's asserted interest is unconnected to the suppression of free expression, a lower standard of review applies:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of that interest.

14

*O'Brien, supra*. This more lenient test applies if (1) the government's asserted interest is unrelated to the suppression of expression; and (2) that interest is implicated on the facts presented. See *Johnson, supra*. If either of these elements is absent, the higher "substantial showing" test applies.

As a threshold matter, it is noted that McGough properly preserved this issue for appeal by raising it in the trial court by motion to quash and objecting when the trial court denied his motion. The record indicates that McGough's counsel requested service on the attorney general in the proceedings below. On appeal, this Court notified the attorney general. The attorney general's office did not file a brief below or with this Court.

The burden is on McGough to first demonstrate that his mask-wearing amounted to constitutionally protected free symbolic speech. McGough failed to meet this initial burden. The record supports that McGough intended to convey a message through wearing the Guy Fawkes mask. However, it is not clear exactly what particular message was intended to be expressed by the mask alone. The record reveals several messages McGough claims to have been expressing through his vehicle and mask wearing. McGough told officers he was making a "powerful statement." When asked at trial if he calculated to conceal his identity when he wore the mask, he replied, "I calculated that it would make a powerful statement." He then explained his statement with the following:

> I basically set myself out to be a martyr - - to show why we cannot give up our - - our civil rights. Everybody knows what's going on in the world, the terrorists and all these other - -
> . . .
>
> And so - - so, if we - - if we give up our essential liberties for a little bit of safety, it doesn't keep us safe. Essentially what you're saying is if my rights are allowed to be violated or if somebody

15

else's rights are allowed to be violated that everybody's rights are allowed to be violated, right? Our constitutional rights are like a spare tire, if you will. You don't know you need them until you need them. And that's essentially what this is about. I tested the due process of Lincoln Parish and this is what has happened.

The mask did not clearly convey a message about civil rights, terrorists, a violation of rights, or due process in Lincoln Parish. Therefore, McGough failed to prove that his mask-wearing was constitutionally protected free symbolic speech.

In addition, the mask was not the only method for McGough to convey his message or make his expression. McGough stated that his vehicular "art installment" was intended to convey the same message as his mask. The message he intended to convey on his Honda was not readily apparent. His Honda had large eye balls painted on it along with the words "We the People," "We are one—free," and "22 veterans a day commit suicide." Like in *Hernandez, supra*, the wearing of a particular mask is not a necessary means of conveying a protected expression of symbolic speech. (See *Hernandez* wherein the Virginia district court held that the mask alone of the KKK costume "contributes nothing to the message already conveyed by the remainder of the costume, nor does it convey any independent message. Thus petitioner's mask-wearing did not constitute expressive conduct entitled to First Amendment protection because it did not convey a particularized message.")

Additionally, viewers of the mask and Honda could not understand the message conveyed. According to Sgt. Brown, the only visible message from behind the Honda was "commit suicide." Sgt. Brown stated that a person would have to physically get out of their vehicle and walk to the Honda to read

16

the words "22 veterans" painted on the top of the trunk. Asst. Chief Davis stated that he could only read the words "commit suicide" and was "under the impression that commit suicide was a message in and of itself." The video evidence of the Honda in the parking lot and trial record indicate that the words were spray painted on the vehicle and difficult to read. Asst. Chief Davis stated that he was "very cautious" and "a little on edge" when McGough got out of the vehicle while wearing the mask. He stated because of the manner in which McGough exited the vehicle with the mask, he suspected McGough could have been armed or not have good intentions. The officers' testimonies show that McGough's message was not understandable to those viewing it.

On the facts of the record, McGough's wearing of the Guy Fawkes mask did not constitute expressive conduct entitled to First Amendment protection because it did not convey a particularized message, ending our inquiry. We affirm the ruling of the trial court.

## CONCLUSION

For the foregoing reasons, La. R.S. 14:313 is not unconstitutional as applied to Morgan Gray McGough and, accordingly, his conviction and sentence for that offense are affirmed.

**AFFIRMED.**

17

**GARRETT, J., concurring.**

I concur in the result. Our law is well settled that a constitutional challenge may not be considered by an appellate court unless it was properly pled and raised in the trial court below. It must be specifically pleaded, and the grounds outlining the basis of unconstitutionality must be particularized. Additionally, where a statute is alleged to be unconstitutional, the state attorney general must be served with a copy of the proceeding and given the opportunity to be heard. La. C.C.P. art. 1880. *See State v. Hatton*, 2007-2377 (La. 7/1/08), 985 So. 2d 709; *State v. Kelpe*, 52,983 (La. App. 2 Cir. 1/15/20), 288 So. 3d 917; *State v. Kennedy*, 49,036 (La. App. 2 Cir. 5/14/14), 140 So. 3d 1201.

It is unclear from this record that proper or timely service of the motion to quash was ever made on the attorney general, as required by law. Although this case had been pending since 2015, the motion was not filed until October 30, 2017, right before the trial commenced.[1] There were no filings or appearances by the attorney general in response to the motion. When the motion was denied in open court on November 1, 2017, no mention was made on the record of the attorney general or the legal requirements that must be met when the constitutionality of a statute is put at issue.

Further, the trial court was not presented with the arguments that are now being made on appeal. A close reading of the motion to quash

---

[1] The record indicates the defendant requested in the motion that the clerk notify the attorney general of the filing. Whether this was done is not reflected in the record. There is a later reference on the record that the defendant "e-mailed" a copy of the motion to the attorney general but had not received a receipt. Since only two days passed from the filing on October 30 to the ruling on November 1, it appears doubtful that the attorney general was afforded an adequate opportunity to respond.

1

indicates that it was premised on La. R.S. 14:313 being unconstitutional as written, for abridging freedom of speech and being overbroad and vague. There were no particularized grounds set forth. The trial court rejected the motion by reasoning that the statute requires that the state must prove that the defendant had the specific intent to conceal his identity, and the jury was so instructed that this was one of the elements of the crime.

On appeal, the defendant is making a completely different argument. He now argues that the statute is unconstitutional as applied to him under the facts of the case because he was merely exercising his free speech rights. The trial court did not have an opportunity to consider all the arguments now made in the appellate brief. Further, in order to convict the defendant, the jury had to find that the defendant was wearing the mask with the specific intent to conceal his identity. Notably, the defendant has not questioned on appeal the sufficiency of the evidence to convict him. The defendant's arguments in his brief that he was wearing the mask as some sort of ill-defined symbolic speech protected under the First Amendment are basically a disguised attack on the sufficiency of the evidence. In closing arguments at trial, defense counsel argued to the jury that the defendant should be acquitted because he was not trying to conceal his identity but was only wearing the mask to make a statement. The jury obviously rejected this argument. Because the defendant's intent in wearing the mask was decided by the jury when it found him guilty, we should not now revisit it when the defendant has not contested the sufficiency of the evidence.

For these reasons, I respectfully concur.